[L. A. No. 2520.   Department Two.—September 26, 1911.]

LOUISE P. FREELON, Appellant, v. H. A. ADRIAN, ALICE J. BARBER, Executrix of the last Will and Testament of Elizabeth J. Barber, Deceased et al., Respondents.

MORTGAGE—DESCRIPTION BY METES AND BOUNDS—INCLUSION OF TRACT DIVIDED INTO LOTS AND BLOCKS—STREETS—EXTENT OF LIEN.—A mortgage of a large tract of land, described by metes and bounds, which included within its exterior limits a smaller tract which the mortgagor had platted into lots and blocks, and of which a map had been recorded, having indorsed thereon a duly acknowledged grant, dedication, and abandonment to the public of a right of way over the streets platted thereon, operates to impress the lien of the mortgage upon the entire title and interest of the mortgagor in all the land owned by her within its exterior calls, including the land so offered to dedication as streets, and to render all thereof subject to sale in satisfaction of the mortgage indebtedness.

ID.—FORECLOSURE—SHERIFF'S DEED—DESCRIPTION BY LOTS AND BLOCKS—TITLE PASSES IN STREETS.—A sheriff's deed, executed after foreclosure of such mortgage, which described part of the property conveyed by lots and blocks as delineated on such map by numbers or letters, is not a conveyance by metes and bounds. Such a deed conveys the title of the mortgagor in the streets on which the lots and blocks so described abutted.

ID.—SHERIFF'S DEED NOT GRANT BY PUBLIC OFFICER.—The provision of section 1069 of the Civil Code, that grants by a public officer are to be interpreted in favor of the grantor, refers to grants of public property by public officers or public bodies to private persons, and does not refer to conveyances by sheriffs.

ID.—EFFECT OF SHERIFF'S DEED—TITLE RELATES TO DATE OF MORTGAGE.—Under a sheriff's deed a purchaser acquires all the right, title, and interest of the judgment debtor in the property sold. When such a deed is executed, by the doctrine of relation, it is deemed and taken as though executed at the date when the lien of which it is the sequence originated, and the effect of the foreclosure sale is itself to invest in the purchaser the title of the mortgagor at the date of the mortgage.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Toland & Rogers, Morrison, Cope & Brobeck, and Edward Hohfeld, for Appellant.

G. H. Gould, for Respondents.

LORIGAN, J.—In 1886 plaintiff owned a large tract of land in Santa Barbara County, a portion of which she platted into lots and blocks and the map thereof entitled "Map of Las Piedras Addition to the City of Santa Barbara, Cal," was on February 10, 1888, recorded in the records of Santa Barbara County, having endorsed thereon a duly acknowledged grant, dedication, and abandonment to the public of a right of way over the streets platted on the map, which included among others, certain streets, named Freelon Avenue, Live Oak Avenue, Loma, Orena, and Montgomery Streets, which were laid out on the map as affording access to the lots in the blocks and also bounding the blocks thereon.

On May 14, 1892, plaintiff executed to William Barber a deed absolute in form, but intended as a mortgage, which deed described the tract conveyed by metes and bounds and included within its exterior limits, among other lands, the Las Piedras Addition, although no reference was made to the addition or the map thereof save to except from the conveyance a few lots and blocks described by reference to the map thereof. In 1895 this mortgage was foreclosed, and in that year the sheriff of the county of Santa Barbara issued to William Barber as purchaser at the execution sale under said decree of foreclosure a deed, which was duly recorded, and which, as far as involved here, conveyed part of the property mortgaged by designated lots and blocks as delineated on the map of the Las Piedras Addition, and another part of said addition, lying north of Freelon Avenue as delineated on said map, by metes and bounds, the north line of Freelon Avenue being referred to as the southern boundary, which, with the other general boundaries, described an acreage of fifty one acres.

On December 9, 1895, William Barber conveyed to Sheffield and Edwards the fifty one acres lying north of the north line of Freelon Avenue and described in the deed from the sheriff

by metes and bounds, and in 1900 William Barber made a gift deed to his wife Elizabeth J. Barber of the other property described in the sheriff's deed to him.

On October 3, 1901, Elizabeth J. Barber and Sheffield and Edwards decided to change the course of Freelon Avenue and for that purpose entered into an agreement and interchanged deeds, the effect of which, as far as it could be done by the parties, was to vacate Freelon Avenue as delineated on the map of the Las Piedras Addition and to substitute therefor another avenue similarly named and running through the lands of Barber, Sheffield, and Edwards. This arrangement affected only that portion of Freelon Avenue lying between the lands of Mrs. Barber and those of Sheffield and Edwards.

Some four years subsequently Mrs. Barber had the Las Piedras Addition south of Freelon Avenue resurveyed and a new map thereof made. In such survey and map some of the streets were retained as originally established, but Live Oak Avenue and Loma, Montgomery, and Orena Streets were closed and abandoned. Freelon Avenue was also changed to conform to that avenue as relocated under the Barber, Sheffield, and Edwards agreement and deeds and thereby a portion of said avenue abandoned. This map was entitled, "Map of New Subdivision of a portion of the Las Piedras Addition to the City of Santa Barbara" and was filed for record on March 2, 1903, and on the same day the board of supervisors of Santa Barbara County (the lands being then outside the city limits of the city of Santa Barbara), upon the petition of Mrs. Barber theretofore filed consenting to and praying for an order for the abandonment of the avenues and streets above described, made an order abandoning and discontinuing them, and accepting the streets as delineated on the new map.

On February 21, 1908, plaintiff brought this action to quiet title to a large portion of the land described in the mortgage from her to William Barber, and the exterior limits of which embraced, together with other lands, that portion of the original, as well as the new plat of the Las Piedras Addition lying south of Freelon Avenue, including the avenue itself. A large number of persons were made defendants, but Elizabeth J. Barber was alone served with process. She answered, denying that plaintiff had any interest in the property, alleged

her own ownership to certain portions thereof which alone are actually involved in this controversy, pleaded also the statute of limitations and by cross-complaint asked that her title be quieted.

The findings of the court were in favor of defendant, except as to a small strip to which defendant disclaimed ownership and which was awarded to plaintiff, and from the judgment thereon entered against plaintiff and in favor of defendant quieting her title plaintiff appeals, as she likewise does from the order denying her motion for a new trial.

While under her complaint plaintiff asserted title to a large tract of land including the Las Piedras Addition, no claim to that extent was asserted on the trial, her sole claim of ownership being limited to the strips of land consisting of Freelon Avenue, Live Oak Avenue and Loma, Montgomery, and Orena Streets as originally located on the map of said addition, and which were closed and abandoned under the resurvey and new map filed by Mrs. Barber on March 2, 1903, and all of which streets were vacated and discontinued by order of the board of supervisors of Santa Barbara County on that day.

It appears from the record that none of the streets in the Las Piedras Addition, otherwise called the Freelon Map, have been used by the public, the platted tract being in its native condition. No interest of the public in any streets is involved here, the only question being one between the parties litigant as to the ownership of the strips of land represented by the streets above named which were by the resurvey of the addition abandoned.

Appellant in support of her claim of title to these abandoned streets and avenues asserts that: 1. The filing of the map of the Las Piedras Tract in 1886, constituted merely an offer to dedicate to the public the avenues and streets indicated thereon; 2. The mortgage (in form a deed) from her to William Barber amounted to a withdrawal of this offer of dedication; 3. The description in the deed from the sheriff to William Barber under the foreclosure sale by making reference to the lots and blocks by letter and number, conveyed only the lots and blocks so designated and did not convey to Barber any title to streets on which said lots and blocks abutted; 4. The sheriff's deed to Barber for that

portion of the tract north of Freelon Avenue did not convey title to the avenue itself; 5. Whatever title Barber acquired depended on the deed to him from the sheriff and as the foreclosure out of which it issued was a proceeding *in invitum* such deed must be construed most strongly against the grantee under it.

Claiming that all these points are well taken appellant insists that she never parted with her title to these avenues and streets.

We will not discuss the claims urged under the first two points, namely,—that the filing of the Las Piedras Map was merely an offer to dedicate and that the mortgage to William Barber amounted to a withdrawal of the dedication. Let it be conceded that all this is true, yet, we do not perceive how it is of any advantage to appellant. If the filing of the map was a mere offer to dedicate which the mortgage to Barber had the effect of withdrawing, she retained no title to any of the avenues and streets delineated upon the map which did not pass to Barber under the mortgage to him if its descriptive calls were sufficient to include them. And they were. Her mortgage to him was not solely of the lots and blocks in the Las Piedras Addition by dimensions or by metes and bounds, even if that fact would be of any importance in determining the *quantum* of title that passed under such a description. The description in the mortgage was in fact of a large tract of land of which the Las Piedras Addition was only a part and the tract was described by metes and bounds which included within its exterior limits the entire addition and the effect of such a description in the mortgage was to impress a lien upon the entire title and interest of the appellant of all property owned by her within its exterior calls. It operated as any other conveyance would and conveyed all the title which appellant had to any property included within the description in the mortgage, and if she owned lots and blocks and streets within the addition, as that addition was brought within the general exterior boundaries, whatever interest she had therein and of whatever character, was embraced in the mortgage.

The third point advanced by appellant is that as the description in the deed from the sheriff to Barber under the foreclosure proceedings was by reference to lots and blocks by letter and number such a description served to convey only

the lots and blocks so designated and did not give the grantee title to the streets and avenues upon which said lots and blocks abutted. The particular claim of the appellant in this regard is that as it appears from an inspection of the map referred to in the deed that all Barber was having conveyed to him were lots and blocks included within scientifically defined lines and measured by precise number of feet, that expression was thus given by the deed that the conveyance to him was only of lots and blocks having a definite number of square feet of land and excluded the idea that title to the streets abutting thereon was intended to pass. In this connection is made the fifth point that in construing the sheriff's deed to Barber a construction must be placed upon it most strictly against the grantee, appellant citing, as supporting this latter proposition, section 1069 of the Civil Code; *Cullen* v. *Sprigg,* 83 Cal. 56, [23 Pac. 222], and *Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160, [50 Pac. 277]. But neither the section quoted nor the cases cited have any relation to conveyances by sheriffs. They have reference to grants of public property by public officers or public bodies to private persons. The Cullen case speaks "of public grants to private persons" and "grants by the state" are referred to in the Oakland case. As to the map having the dimensions marked upon it, this is true as it is usually true of any correct map of a subdivision or addition. But the conveyance to Barber is not of lots and blocks by precise numbers of feet but by numbers or letters which is not, of course, a conveyance by metes and bounds.

The mortgage of the appellant to Barber embraced her title to all lots, blocks, and streets in the addition and was subject to sale in satisfaction of the indebtedness secured thereby. Under a sheriff's deed a purchaser acquires all the right, title and interest of the judgment debtor in the property sold. (Code Civ. Proc., sec. 700.) When such a deed is executed, by the doctrine of relation, it is deemed and taken as though executed as at the date when the lien of which it is the sequence originated, (*Foorman* v. *Wallace,* 75 Cal. 552, [17 Pac. 860], and "the effect of the sale is itself . . . to invest in the purchaser the title of the mortgagor at the date of the mortgage." (*Sichler* v. *Look,* 93 Cal. 600-610, [29 Pac. 220].)

Section 831 of the Civil Code provides that "an owner of

land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown," and section 1112 of the same code provides that "a transfer of land bounded by a highway passes the title of the person whose estate is conveyed to the soil of the highway in front to the center thereof unless a different intent appears from the grant."

If the appellant had made a deed to Barber of the lots and blocks in the Las Piedras Addition, designating them simply as streets and blocks therein, it would not be questioned for a moment but that under such a conveyance his title extended to the middle of the street upon which said lots and blocks so conveyed abutted and if the conveyance had been of all the lots and blocks in the addition simply designated as such, he would have taken title to all the streets.

So under the authorities above referred to there is no good reason to be advanced why the sheriff's deed, which is in effect the deed of appellant and is deemed to be executed as on the date of the mortgage under which title to these streets was conveyed, should not be given the same effect, and be held to grant and convey the same title as her simple conveyance would have done.

The conclusion we have reached makes it unnecessary particularly to discuss the fourth point made as to Freelon Avenue. Title to it passed under the sheriff's deed to Barber as effectually as did the title to the other streets involved in the action.

Our conclusion that title to these avenues and streets vested in Barber under the sheriff's deed and by conveyance from him to defendant makes it unnecessary to consider the claim of appellant that she had acquired title thereto by adverse possession.

The judgment and order appealed from are affirmed.

Melvin, J., and Henshaw, J., concurred.