JOHNSON & JOHNSON

*v.*

SEABURY & JOHNSON.

[Decided June 1st, 1905.]

1. In a suit to enjoin defendant from selling absorbent cotton in packages and under labels resembling those used by complainants, evidence *held* to show that defendant's action in simulating complainant's packages and labels tends to mislead the public as to the origin of the goods.

2. The fact that the symbol used by complainant to mark and identify its goods had been commonly used by the public for ornamental and advertising purposes before its adoption by complainant on its label, does not entitle defendant to use the same label on the same class of goods

manufactured by complainant where such use is intended to mislead purchasers as to the origin of the goods.

3. Where defendant had occasionally used a certain symbol on some of the packages containing its goods, such use being for ornamentation and not for the purpose of identifying its goods or indicating their origin, complainant is entitled, after having made use of the symbol for the purpose of distinguishing its goods from others, to restrain defendant from employing it in the same manner on similar goods.

4. The fact that complainant had formerly falsely represented in its circulars that it had, by act of congress, exclusive right to use the devices which its labels bore, does not disentitle it to relief, the false claim having been withdrawn three years before this suit was brought.

On bill, &c.

*Mr. Willard P. Voorhees, Mr. Archibald Cox* and *Mr. Charles G. Coe* (of the New York bar), for the complainant.

*Messrs. Brinkerhoff & Fielder* and *Messrs. Pryor, Melliss & Harris* (of the New York bar), for the defendant.

BERGEN, V. C.

The result sought is an injunction restraining defendant from marketing, in competition with the complainant, its goods, so dressed, in shape, color of package and trade symbols, as to resemble those of complainant, and thereby mislead a purchaser as to the origin and character of his purchase.

The prayer for relief is not rested upon a trade mark right, but upon the principle that unfair competition in business, resulting in the confusion and sale of the goods of one as those of another, to the injury of the consumer and loss to the party whose goods have been simulated, will be enjoined.

The complaint is that after complainant had, by distinctive packages, the use of unique labels, of which a red Greek cross was a prominent feature, and by liberal and extensive advertisement, acquired in the market the names of "Red Cross Cotton," "Red Cross Gauze" and "Red Cross Goods," for the articles manufactured and put up by it, and obtained, under such descriptive names, a very large and extensive sale for its goods, the defendant, for the purpose of acquiring the benefit

of such reputation, and to induce the sale of its goods as and for such of the goods of the complainant, as to which it was a competitor, adopted the shape and color of complainant's packages, and, in connection therewith, the red cross symbol, the effect of which is a misrepresentation of the origin and ownership of the goods, which equity will restrain.

The defendant's answer sets up a prior use of the red cross symbol, not only by it, but by the public, of so general a character as to make the symbol *publici juris,* so that neither of these parties have any such special right thereto as will justify this court in interfering, and that as to the color and shape of the packages the use of such by the defendant antedated that of the complainant.

The prayer of the bill seeks to enjoin the use of the red cross on packages of absorbent cotton, gauze and medicated cottons, and in connection with the use of the symbol the imitation by the defendant of the color and style of package used by the complainant in offering them to the public. As to medicated cottons, it was admitted on the argument that their sale, never important, was passing away, and that they do not enter into competition with absorbent cotton, an article so superior for similar uses as to have substantially displaced it in market. This admitted condition leads me to dismiss from further consideration borated, carbolated and salicylated cottons, classed as medicated cottons, as not being sufficiently competitive to justify the awarding of an injunction, and leaves as the real question for consideration whether, as to absorbent cotton and gauze, the complainant has presented such a case as will entitle it to relief.

The consideration of this cause has required the careful reading of over four thousand pages of testimony and an examination of a large part of one thousand five hundred exhibits. This statement is sufficient to demonstrate the impracticability of any detailed analysis or comparison of the testimony, much of which is irrelevant, and I shall limit myself to a statement of the facts proven by a preponderance of evidence. Both parties are corporations under the law of this state, engaged in a similar business, in which, as to the goods in dispute, they are active competitors. The complainant was incorporated in 1887,

and the defendant, under the laws of New York, in 1893, and later under the laws of this state, in 1896. Previous to the first incorporation, and from the year 1874, the defendant's predecessors had conducted a business to which it succeeded. Immediately after its incorporation the complainant became an active competitor of the defendant's predecessors, particularly in the sale of absorbent cotton and gauze, and by invention and care in preparation produced and offered to the public a grade of absorbent cotton superior to any that had theretofore been offered, and for the purpose of attracting trade and inducing the public to buy its goods, as well as of distinguishing its products from that of other producers, interleaved its layers of cotton with a blue tissue paper, enclosed it in dark blue cartons of a proper size to contain the quantity in weight desired, ranging from parts of a pound to a pound, and upon these packages placed a label of conspicuous size and color, the prominent feature of which was two red crosses. The color, style of package, interleaving with blue tissue and label, presented an appearance entirely distinct from the packing in use by the defendant at that time, which was principally a granite carton without interleaving tissue. The quality of complainant's production, and the attractive form in which it was put up, appealed so strongly to the public that the demand for it grew to unusual proportions, and the style and character of the label acquired for it in the trade, and from the public, the name of "Red Cross Cotton." The defendant at first assailed the use of the interleaving tissue, upon the ground that the purchaser was paying for cotton and getting paper, but failing in this effort to retard the sale of complainant's goods, and observing the public demand therefor, in the year 1890 or 1891, commenced to put up an inferior grade of its cotton in similar packages, but without the red cross label, using, at first, on the ends of the larger packages and on the outside of the wrapping used to hold smaller packages, a seal without a red cross. Succeeding this, it commenced the use of a seal with a small red cross in the centre, being a seal used by them in 1884 for the covering of cork stoppers to bottles not containing absorbent cotton, and since the commencement of this suit they have so enlarged this cross as to

make it a prominent and very conspicuous feature of the label, which enlargement has been made a subject-matter of this controversy by a supplemental bill and an answer thereto.

There is but one conclusion to be drawn from the testimony, and that is that the absorbent cotton of the complainant has for many years past been known to the trade and public as "Red Cross Cotton," induced by the prominent display on its packages of a red cross, and that the action of the defendant in simulating complainant's packages and symbol creates a confusion of goods tending to mislead the public as to the origin and ownership of defendant's goods, and to induce their sale as and for the goods of the complainant, because the imitation cannot be said to be for the purpose of inducing the public to buy the goods as the cotton of the defendant. If so, it would strive for such a radical distinction as would prevent complainant's goods from being mistaken for it. The defendant does not deny the similarity of package, and its attempt to sell its cotton under the red cross label, but justifies on the ground that prior to the introduction by the complainant of its goods the defendant had used a seal with a red cross in the centre on other of its goods, and that such use, together with its use of blue paper as a wrapper for bundles of lint years ago, entitles it to extend the use of the red cross and blue wrapper to absorbent cotton, even if in so doing it produces a fac-simile of complainant's package.

It is undoubtedly true that in 1884 the defendant began to use a seal, in the centre of which was a small red cross, but it is equally clear that the red cross seal was not used on packages of absorbent cotton or gauze until after the complainant, by its use of the red cross symbol, had established in the market a name for its goods under the title of "Red Cross," and that its use by defendant was, in the beginning, confined to a class of goods differing from absorbent cotton and gauze, and even to the extent used was never accepted by the public as a distinctive mark of the origin or ownership of articles to which it was applied, or in any way looked upon as a mark distinguishing the goods of the defendant from the like product of other manufacturers, and there is also abundant proof that a red cross was used by numerous persons, on goods of a different character, as

ornaments and for general advertising purposes, prior to complainant's use of the cross, upon which the defendant, in connection with its prior use on a part of its productions, bases a claim to use it upon all of its manufactured articles, without regard to the special use made by the complainant, whereby it has become in the mind and eye of the public the well-known *indicia* of complainant's cotton. The use of a red cross has been so general that its adoption by anyone, except in cases where it would create confusion in the public mind and result in what the law calls unfair competition, can hardly be questioned. On the other hand, this public use can confer on the individual user no higher property in the symbol than the right of such individual to use his own name in marketing his goods in competition, which is condemned when intentionally selected for the purpose of misleading a purchaser as to the origin of the article sold in 'order that the seller may derive a profit from another's trade reputation. *International Silver Co.* v. *Rogers Corporation, 67 N. J. Eq. 646.*

. The prior use by the defendant of a seal with a red cross in the centre, applied to its products other than absorbent cotton, cannot, under the conditions disclosed in this cause, be extended by it to the latter class of goods, to the injury of the complainant and the public, nor prevent its exclusive use by the complainant to indicate the ownership and origin of its absorbent cotton, because its prior use by the defendant, as testified to by its manager, was rather ornamental than for the purpose of distinguishing its goods from others. It was not intended to, nor did it, signify to the public a particular trader's goods. Whatever prior use the defendant may have made of the disputed symbol, it is very certain the public never looked upon it as an *indicia* of the defendant's goods, or of their origin, and its subsequent use by the complainant did not result in that confusion or unfair competition, which the law condemns, that only arose when the defendant simulated the complainant's packages and adopted the use of the red cross after the complainant had established its meaning to be "Red Cross Cotton manufactured by Johnson & Johnson." Any prior use, to be of value, must be such as to denote the origin of the product as to which it is

claimed to be a trade mark. *Holt* v. *Menendez, 23 Fed. Rep. 869; Menendez* v. *Holt, 128 U. S. 514.* Whatever value the red cross has as a brand for absorbent cotton was given it by the complainant, and as was said by Judge Coxe in *George* v. *Smith, 52 Fed. Rep. 830:* "It is their seal of genuineness and guaranty to purchasers that the goods so labeled are of a superior quality. The advantages of higher prices and larger demand exist because of the established excellence of the goods. These are advantages which belong to the complainants. * * * To transfer the good will thus secured by years of arduous and conscientious endeavor to the defendant, or throw it open as a poaching ground for the general public would be doing the complainant gross injustice."

Every case of this class must be dealt with according to the facts in each, having in mind the rights of the public as well as those of the parties. In the case under consideration, the complainant, by conspicuous and continuous use of and by extensively advertising its goods under the red cross symbol, so impressed the public that it came to rely upon the red cross as indicating complainant's goods, and to look upon the red cross symbol as *indicia* of origin, and from this grew the habit of the consumer when desiring complainant's goods to call for "Red Cross Cotton," as in a similar manner was applied the word "Angostura," in *Siegert* v. *Findlater, 7 Ch. Div. 801,* so that by the act of the public these words became the usual designation of the article, which the court will protect. *Levy* v. *Waitt, 61 Fed. Rep. 1008–1011.* Thus, because of complainant's use of the red cross, has its cotton acquired in the market under such title a most favorable consideration and a trade reputation of great value, which the defendant seeks to destroy because of its prior use of a red cross seal upon certain other medicated articles, a use exercised in a desultory and inconspicuous way, and which, because of the manner of its use, the public never recognized or applied as denoting the origin or ownership of the goods in connection with which it was used. A claim of this character has no standing in equity, and the use asserted will not prevent another from acquiring an exclusive right to the use of the symbol on other articles, although sold in competition

and likely, by reason of their superior properties or the skill of the introducer, to supplant the use of the goods of the other.

The principle of law is general and without exception. It is that no one may so exercise his own rights as to inflict unnecessary injury upon his neighbor. It is that no one may lawfully palm off the goods of one manufacturer or dealer as those of another to the latter's injury.

The fact that others as well as the defendant have used the red cross for different purposes, and that the complainant has no ownership thereof, does not meet the question. Complainant is the owner of the good will of a large and lucrative business under the name of "Red Cross Cotton," which is about to be injured if the defendant be not restrained. Ownership of the means by which a fraud is to be committed is not essential to entitle one to enjoin its perpetration; it is sufficient if the complainant be entitled to the custom and the good will of a business likely to be injured by the palming off of another's goods as his. *Shaver* v. *Heller & Merz Co., 108 Fed. Rep. 821.*

The defendant here makes no claim that because of its use of the red cross in the manner stated it has acquired any right to its exclusive use as to any of its articles, or that its goods have ever acquired a distinctive name because of the use made by it of the red cross, but puts its defence upon the ground that whatever business reputation the complainant may have established through the use of the red cross as a symbol has been accomplished in defiance of the fact that many persons were using the red cross upon their products, and for that reason all the world now have a right to simulate the packages and emblems of the complainant. To this contention I cannot give my approval. There is no evidence in the cause to justify the claim that there was any use by the defendant of the red cross indicating any prior appropriation of the symbol as a trade mark, or for the purpose of indicating origin or the character of the goods, which would prevent complainant from making its absorbent cotton distinctively known under that mark. That it was used by many persons as an incidental ornament, or to indicate that the article or appliance in connection with which it was used belonged to a class desirable in aid of human ills

or for the relief of the suffering, certainly appears; but this fact has no influence on the question being considered. The red cross upon the side of certain wagons has, by its use, come to be accepted by the public as indicating an ambulance, but it does not indicate the origin of that particular vehicle, or the name of the person who built it, and any such general use would not prevent the complainant from using the mark for the purpose of indicating origin and ownership, and to distinguish its absorbent cotton from that of other productions. There can be no doubt that the defendant, in changing its style of package on absorbent cotton to correspond so closely to that of the complainant's as to be almost identical in appearance, and in adopting the use of the red cross on such packages, had in view but one purpose, and that was to mislead the public into the belief that in buying defendant's packages they were getting the goods of the complainant. For more than fifteen years past the complainant has marketed its absorbent cotton in the manner stated, and at great expense acquired a name and reputation, confessedly a most valuable property, which the conduct of the defendant, if not restrained, will most seriously affect, if not destroy, and against which according to every equitable rule the complainant is entitled to protection.

The views which I have above expressed with reference to absorbent cotton apply in a much stronger degree to "gauze," the only other article subject to my consideration, for the evidence of unfair business competition in this connection is too plain to warrant discussion. This gauze was put up by both parties in what they call glass containers, the complainant using a square one and the defendant a round one. The round jar was superior to that of the square jar used by the complainant, both as to construction and convenience in taking out the contents. When the demand for the complainant's goods became a serious menace to the defendant's business, the defendant changed the shape of its jar so as to simulate that of the complainant, and in 1899 or 1900 began to label its gauze packages with the symbol of a red cross, it having previous to this time used a seal, in the centre of which was a figure of Mercury, being the same seal that was used by the defendant on its ab-

sorbent cotton until its infringement of the complainant's red cross label.

This disposes of the case with the exception of one point raised by the defendant, which is that the complainant is not entitled to relief because it does not come into the court with clean hands.    That claim is based upon the following facts: In 1895 the house of representatives of the congress of the United States had before it for consideration an act, by the terms of which the American National Red Cross Society was given the exclusive use of the symbol of a red cross, with power to license its use, subjecting all users other than such licensees to severe penalties.    The passage of this bill the complainant resisted and seems to have been able to delay congressional action.    In order to remove its opposition, the officers of the American National Red Cross Society entered into a contract with the complainant, by the terms of which its exclusive right to the red cross as a symbol was recognized and confirmed, and thereafter, its opposition being removed, the bill passed the house.    At a subsequent session of congress the bill was amended, passed by the senate and house, but failed to become a law for want of the president's approval.    During this contest, and before the making of the agreement, the complainant had obtained from its counsel an opinion that any such law would be unconstitutional.    The charge of the defendant is that with knowledge of the fact that the bill had not become a law, and of its supposed unconstitutionality if it was enacted, it caused to be inserted in its annual price list for 1895, and in the succeeding year, a notice that by act of congress the right to the use of a red cross as a symbol had been vested in the American National Red Cross Society, and that the complainant had been granted the right to the exclusive use of the red cross as a symbol.    Without considering the propriety of such an advertisement, which perhaps was issued in anticipation of what the complainant supposed was likely to happen, it is enough to say that if it was a misrepresentation, such as if present when the bill of complaint was filed would justify the court in withholding its aid, the advertisement complained of was withdrawn at least three years before the suit was instituted.    The refusal to

hear a party who comes into court with unclean hands is based upon the conditions existing when the party applies for aid. *Worden & Co.* v. *California Fig Syrup Co., 102 Fed. Rep. 334, 336.*

The complainant is entitled to an injunction order restraining the defendant as prayed in the bill of complaint, so far as the prayer relates to absorbent cotton and gauze.