[S. F. No. 11700. In Bank.—December 28, 1925.]

## TULARE IRRIGATION DISTRICT et al., Petitioners, v. THE SUPERIOR COURT OF TULARE COUNTY et al., Respondents.

[1] INJUNCTION—STAY PENDING APPEAL—JURISDICTION OF SUPERIOR COURT—EQUITY.—The superior court, sitting as a court of equity, has the power, in the exercise of a sound discretion, to suspend the operation of an injunction to which it has decided a party is entitled, pending an appeal from the judgment, the purpose of the stay or postponement of the effective date of the injunction being to protect the appellant from having his right of appeal rendered nugatory or merely nominal if he should succeed.

[2] ID.—POWER OF SUPERIOR COURT—STATUTORY AUTHORITY.—There is no statutory authority in this state for the exercise by the superior court of the power to suspend the operation of an injunction pending an appeal.

[3] ID. — EQUITY — SUPERIOR COURT — JURISDICTION.—Where not prohibited by statute, the superior court, under section 5 of article VI of the constitution, has all the jurisdiction in equity which was possessed by the English courts of chancery on July 4, 1776.

[4] ID.—PROHIBITION—PROVINCE OF.—It is the sole province of the writ of prohibition to arrest proceedings of an inferior tribunal or persons exercising judicial functions when without or in excess of jurisdiction.

[5] ID.—PARTIES—JURISDICTION.—The question of jurisdiction of a court of equity to suspend the operation of an injunction pending an appeal does not depend upon which litigant happened to get into court first. Such court may exercise its jurisdiction regardless of which party is the plaintiff or the defendant, and the equitable jurisdiction is the same in the one case as in the other.

[6] ID.—ACTIONS AT LAW—JUDGMENTS—SIGNATURE OF JUDGE.—In ordinary actions at law it is the rule that the signature of the judge is not necessary to the validity of the judgment, but "it has been the almost invariable custom in this state for decrees in equity to be so signed."

1. Suspension of injunction pending appeal, note, 38 **L. R. A.** (N. S.) 436. See, also, 14 Cal. Jur. 396.

3. See 7 Cal. Jur. 685; 7 R. C. L. 1032.

4. Province of writ of prohibition, notes, 12 **Am. Dec.** 604; 18 **Am. Dec.** 238; 111 Am. St. Rep. 929. See, also, 21 Cal. Jur. 583; 22 R. C. L. 4.

6. See 14 **Cal. Jur.** 914.

[7] ID.—JUDGMENTS—PURPOSE OF ENTRY—CHANGE IN CONCLUSIONS OF LAW.—Ordinarily the judgment or decree is ineffectual for any purpose until entered. Until the decree is entered it is merely a purpose in the breast of the court and may be changed as the judge may determine, and, at any time before the entry of the decree the court may change its conclusions upon the facts that have been found.

[8] ID.—FINDINGS—CONCLUSIONS OF LAW—SUBSEQUENT ANNOUNCEMENT OF INTENTION TO STAY INJUNCTION PENDING APPEAL — JURISDICTION.—Where the superior court, in the exercise of its equitable jurisdiction, announces, after it has filed its findings of fact and conclusions of law in favor of plaintiffs determining their right to a permanent injunction against defendant, and at a time when no judgment has been entered, that it is its intention to grant the defendant a stay of the operation of the injunction pending the determination of an appeal which the latter intends to take, if it be essential to the validity of the decree intended to be entered by the court that the conclusions of law specify the effective date of the said injunction as upon the determination of the appeal favorable to the plaintiffs, the court would have jurisdiction to change its conclusions of law accordingly, for no judgment or decree has yet been entered; but such a change would be unnecessary, especially as affecting the result of the instant proceeding in prohibition by said plaintiffs to restrain the court from making an order staying the operation of the injunction pending the appeal, for two reasons: first, because any alleged inconsistency between the conclusions of law and the judgment may be remedied only by a direct attack on the judgment, and not by prohibition which is a collateral proceeding, subject to the rules governing a collateral attack excepting in certain cases, and, secondly, if the said decree be entered in exact conformity with the conclusions of law the court would have the power by a separate order, made concurrently with the entry of the decree, staying the injunction pending appeal, and such order, while strictly not a part of the decree, would be in effect a part thereof and operate concurrently therewith.

[9] ID.—STATUS QUO—RULE INVARIABLE.—Assuming the rule that ordinarily when the *status quo* is referred to upon the making of an order staying the operation of an injunction pending an appeal, the status at the commencement of the action is in contemplation, is correct, yet such rule is not invariable.

[10] ID.—DISCRETION—JURISDICTION.—The question of maintaining the *status quo* by the making of an order suspending the operation of an injunction pending an appeal only arises in the consideration by the trial court of the rules which should guide it in the exercise of

7. See 14 Cal. Jur. 916, 937; 15 R. C. L. 580.

its discretion and does not go to the jurisdiction of the court to determine the question one way or the other.

[11] ID.—SUBJECT OF LITIGATION—POWER OF COURT.—In an action involving, according to the allegations of the complaint, the right of the defendant irrigation district to pump water from a tract of land and convey it away therefrom for use in the irrigation of lands within said district, the trial court, in making an order suspending the operation of an injunction against said district pending an appeal by it, may take into consideration that the subject of the litigation includes not only the right of said district to take water from said tract, but also the matters presented by said district's answer involving the preservation from destruction of the extensive property and works of said district and the valuable improvements on the lands within the district.

[12] ID.—ORDER STAYING OPERATION OF INJUNCTION PENDING APPEAL—PROHIBITION—CONSTITUTIONAL LAW—IRRIGATION DISTRICTS.—In a proceeding in prohibition to restrain the superior court from making an order suspending the operation (pending an appeal) of an injunction enjoining an irrigation district from pumping water on a tract of land and conveying it away therefrom for use in the irrigation of lands within said district, it cannot be successfully contended by the petitioners that the making of such order will deprive them of their property without due process of law and without adequate compensation, where the action is still pending and will be deemed pending until its final determination on appeal.

[13] ID.—ORDER SUSPENDING OPERATION OF INJUNCTION DEEMED PART OF INJUNCTION.—The exercise of the power in making the contemplated order suspending the operation of the injunction pending the appeal is incidental to the right of appeal, and the contemplated order may be deemed a part of the injunction itself.

---

(1) 3 C. J., p. 1282, n. 20.   (2) 3 C. J., p. 1283, n. 27.   (3) 15 C. J., p. 985, n. 42; 32 C. J., p. 388, n. 97, 99, 1.   (4) 32 Cyc., p. 604, n. 32.   (5) 3 C. J., p. 1282, n. 20.   (6) 21 C. J., p. 649, n. 77; 33 C. J., p. 1213, n. 75.   (7) 21 C. J., p. 707, n. 72; 34 C. J., p. 54, n. 48, 52.   (8) 34 C. J., p. 524, n. 81, p. 563, n. 28 New; 32 Cyc., p. 617, n. 18; 38 Cyc., p. 1988, n. 96, 99.   (9) 3 C. J., p. 1282, n. 20; 32 C. J., p. 20, n. 4.   (10) 3 C. J., p. 1282, n. 20.' (11) 3 C. J., p. 1282, n. 20.   (12) 1 C. J., p. 1171, n. 48; 12 C. J., p. 1239, n. 86 New; 20 C. J., p. 518, n. 42 New.   (13) 3 C. J., p. 1282, n. 20; 32 C. J., p. 434, n. 77 New.

PROCEEDING in Prohibition to restrain the Superior Court of Tulare County from making an order staying the operation of an injunction pending appeal. Albert Lee Stephens, Judge Presiding. Writ denied.

The facts are stated in the opinion of the court.

W. R. Bailey, Farnsworth, McClure, Burke & Maddox, H. Scott Jacobs and Wheaton A. Gray for Petitioners.

Sloss & Ackerman, W. G. Irving and Power & McFadzean for Respondents.

SHENK, J.—This is an application for a writ of prohibition to restrain respondent court and judge from making an order suspending a permanent injunction pending appeal.

It appears from the petition that on July 15, 1916, an action was commenced in the superior court of Tulare County by some of the petitioners, but not by all of them, against the Lindsay-Strathmore Irrigation District, the purpose of which was to obtain a permanent injunction restraining the defendant irrigation district from pumping water from a tract of land in Tulare County known as the Rancho de Kaweah and from conveying said water away from said lands and away from the watershed of the Kaweah River for use in the irrigation of lands in the defendant district. It was alleged in the complaint in said action that the Tulare Irrigation District is a political subdivision and body corporate, organized and existing under and by virtue of the Irrigation Act of 1887 (Stats. 1887, p. 29) ; that the defendant Lindsay-Strathmore Irrigation District is also a political subdivision and body corporate, organized and existing under and by virtue of the Irrigation Act of 1897 (Stats. 1897, p. 254), and situated wholly within the county of Tulare about twelve miles in a southerly and southeasterly direction from McKay Point, and embracing within its boundaries about 14,000 acres of land, divided into numerous private holdings; that from time immemorial the Kaweah River had flowed and does now flow from its source in the Sierra Nevada Mountains in the county of Tulare in a westerly direction to McKay Point where it forks or divides, the northerly channel being known as the St. John's River and the southerly channel as the Lower Kaweah River and Mill Creek; that said river forms a distinct watershed on the western slope of said mountains until it reaches McKay Point; that from that point it spreads out through its numerous branches into what is known as the Kaweah delta,

until it is many miles in width from north to south and
which comprises approximately 300,000 acres of land; that
in this delta are located the cities of Visalia, Tulare, and
other towns and many hundreds of farms upon which are
growing fruit trees, timber, alfalfa, and other agricultural
crops and upon which there are thousands of people and large
numbers of livestock; that all of said farms and lands and
people require the whole of the water of the Kaweah River,
both surface and subterranean flow, for irrigation and do-
mestic uses; that the underground flow is necessary to fur-
nish a foundation for the surface water flowing in said
river and its branches and the ditches and channels leading
therefrom and to hold up the underground water-table be-
neath the surface of said lands in order to make the same
productive; that the lowering of said water-table or under-
ground flow will gradually diminish the productive qualities
of said lands; that the lands adjoining said delta, including
the lands embraced within the boundaries of the Lindsay-
Strathmore Irrigation District, are higher than the lands in
said delta and are composed mostly of adobe and clay; that
water will not readily seep through the same and that the
impervious condition thereof confines the surface and under-
ground waters of said river to the said delta; that the
Tulare Irrigation District is the owner of the Tulare Irri-
gation District canal leading out of the St. John's River;
that some of the petitioning ditch owners are appropriators
of water from the Lower Kaweah River, some are appropri-
ators from both of said rivers, and that the petitioners,
other than the ditch companies, are the owners of the lands
riparian to either one or the other of said rivers; that all
of said owners and appropriators were such prior to 1915,
and have continuously used said water except as such use
has been interfered with by the defendant district; that
within six months prior to the commencement of said action
the defendant district contracted to purchase and went
into the possession of, and claimed to own, a tract of land
known as the Rancho de Kaweah, comprising about 1,100
acres and situated about four miles from McKay Point and
lying on both sides of the Lower Kaweah River and within
one-half mile from the St. John's River; that said Rancho
de Kaweah overlies the underground body of water of said
delta; that immediately after the defendant district took pos-

session of said Rancho de Kaweah it bored three wells in
different locations therein to a depth of 100 feet down into
said underground body of water and obtained a large quan-
tity of water therefrom; that said wells were bored for the
purpose of the irrigation of lands within the boundary of
the defendant district and conducting the same outside of
said watershed; that said defendant threatens to and will,
if not restrained by the court, bore thirty-seven more wells
and construct pumping plants thereon for the purpose of
pumping water from said wells for irrigation purposes on
the lands of the district; that if the defendant be permitted
to bore said wells and construct said pumping plant and
take said water the water so taken will substantially diminish
the quantity of water in said underground body of water
otherwise available to the plaintiffs, to the irreparable injury
and damage of the plaintiffs; that the defendant district
has no right to take any of said waters away from said
watershed or to diminish the surface or underground flow
of said Kaweah River for the purpose of supplying the lands
of the said district with water for irrigation or other uses.

It further appears from said petition that during the pen-
dency of said action numerous other parties appeared as
interveners and set forth their alleged rights substantially
in the same form as the original plaintiffs in said action.
The defendant in due time filed its answer to the complaint
and to the complaints in intervention in which it put in
issue generally and specifically the allegations of the com-
plaint; denied that the underflow waters of the Kaweah River
are necessary to supply water for the irrigation of the
lands of the complainants, and alleged that except immedi-
ately below the bed of said river and of said streams there
is no underflow thereof; denied that any part of the under-
flow waters of said river were necessary or available for use
in irrigating the lands of the complainants, and alleged that
underlying the surface of the lands of the complainants of
said delta is a broad body of diffused and percolating water
many miles in width moving at right angles to the surface
contours of said lands and at various depths beneath the
surface of the same, which water does not constitute any
portion of the underflow of said river or streams and eventu-
ally drains into the trough of the valley and is lost for any
and all useful purposes; admitted that it owned the Rancho

de Kaweah and had bored three wells prior to the commencement of said action, and that it has subsequently bored thirty-four wells upon its said lands and is pumping as much as fifty-five cubic feet of water per second from said wells, and alleged that subsequent to the commencement of said action it constructed its irrigation system at a cost to it of approximately $1,600,000, and has by means of said system caused the water pumped from said wells to be conveyed to lands within said district for the irrigation and domestic use of thousands of people living thereon, and that the aggregate amount of waters pumped from said wells was 13,500 acre-feet during the season of 1918 and 14,800 acre-feet during the season of 1919; denied that it had or will cause any injury or damage to the complainants in pumping the amount of water it has been pumping or any amount not in excess of 25,000 acre-feet; denied that any water taken by it not in excess of 25,000 acre-feet would substantially or at all diminish the quantity of water in the said underground body of water alleged to be available to the complainants. In the event that the court should find that the defendant by reason of its said pumping operations was causing any diminution in the amount of the water which would naturally flow in said streams the defendant prayed that the court apportion said waters so that it may take the maximum of 25,000 acre-feet, and it is alleged that water in that amount can be taken from the wells of the defendant and conveyed to the lands within defendant district without interfering with the rights of the complainants. It is further alleged that all of the lands embraced within the boundaries of the defendant district are susceptible of a high degree of cultivation and that more than 14,000 acres thereof are susceptible of the cultivation and growth of oranges and other citrus fruits; that more than 9,000 acres thereof are planted to citrus fruits, and that more than 7,500 acres are now in bearing; that said citrus fruits cannot be grown or produced without irrigation; that there is no other source of supply of water for irrigation of said lands within said district other than the water produced by the pumping operations in and upon the said Rancho de Kaweah; that if the defendant becomes unable to use said water by reason of an injunction in said action or otherwise the trees, fruits,

and vegetables growing on said lands will die and all of said lands will become arid and waste.

The allegations and denials of the pleadings as above epitomized somewhat in detail show the extent of the issues involved in the litigation and indicate the importance of the problem confronting the trial judge when called upon to exercise the discretion which the defendant Irrigation District contends he may and should exercise in its favor.

One phase of this litigation has heretofore been before this court (*Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056]). The decision in that matter, filed February 12, 1920, effected a mistrial. A retrial was commenced before the respondent judge on the twenty-eighth day of November, 1921. Evidence was taken comprising some 27,000 pages of typewritten transcript and many hundreds of exhibits. After argument the cause was submitted for decision on the eighth day of February, 1924. On May 16, 1925, the respondent judge signed and filed his findings of fact and conclusions of law in favor of the plaintiffs. Before filing the same he announced that such would be his decision, whereupon counsel for the defendant district on May 7, 1925, served and filed a notice of motion wherein it was recited that the defendant had been advised that the court intended to enter a decree enjoining the defendant from taking water from its wells on the Rancho de Kaweah; that in good faith it intended to perfect and prosecute an appeal from said judgment to this court, and that if said judgment be enforced pending appeal, said appeal in any event would be of no avail, and notice was given that the defendant would move the said court before the entry of said decree for an order to be incorporated in said decree or made concurrently therewith suspending the operation of said injunction pending the appeal to this court. The said motion came on to be heard and was argued on May 15, 1925, the day before the findings of fact and conclusions of law were filed. On the following day, to wit, May 16th, the said findings of fact and conclusions of law were filed as aforesaid and the court took under advisement the motion of the defendant for an order staying the injunctive relief. Thereafter, on the fourteenth day of July, 1925, the respondent judge announced that it was his intention to grant said motion and that the same would be granted on the

twenty-eighth day of July following, whereupon this petition was filed on July 24, 1925, pursuant to which an alternative writ of prohibition was issued.

In the answer and return subsequently filed the respondent judge among other things alleges that certain of the petitioners, complainants in said action, were not parties thereto at the time of the commencement thereof; that they were made parties at later dates, to wit, some on the fourteenth day of June, 1920, some on the 20th of November, 1920, and the last one on the fifteenth day of January, 1921. It is further alleged that the construction of the plant and system of wells, pumps, pipe-lines, canals, and other works constructed by the defendant district had been commenced and prosecuted to a considerable extent prior to the commencement of said action on July 15, 1916, and that said works were substantially completed by the defendant district during the year 1917 and were in full operation and use in the month of April, 1918, long before the first appearance of numerous parties plaintiff in said action whose names are set forth in said answer and return.

At the time of the commencement of said action no application was made by the plaintiffs for a preliminary injunction and no action was taken by the plaintiffs for injunctive relief until the fourteenth day of March, 1921, when application was made to the respondent court for a preliminary injunction restraining the defendant district from taking or diverting any of the underground waters underlying the Rancho de Kaweah or any of the surface waters of the Kaweah River as it passes through said rancho away from said lands at any time when there should be flowing in the Kaweah River at McKay Point not to exceed 1,140.7 cubic feet of water per second. Thereafter, on April 6, 1921, the said court made its order that the defendant should, pending the determination of said action, be permitted to operate its pumps on the Rancho de Kaweah on condition that it restore to the channel of the Kaweah River at all times when the flow of said river at McKay Point should be less than 1,144 cubic feet per second, such quantity of water, not to exceed fifteen cubic feet per second, as added to that then flowing at McKay Point would equal 1,144 cubic feet per second, except that such restoration need not be made between the fifteenth day of November of each

year and the fifteenth day of the following April, and that a preliminary injunction be issued, restraining the defendant from taking or diverting any underground water underlying the Rancho de Kaweah away from said lands, excepting at the times and in the manner above stated. Thereafter, on or about the twenty-fifth day of August, 1921, a preliminary injunction was issued by said court in accordance with said order, was served on the defendant and has ever since been in full force and effect except as to a modification thereof favorable to the defendant, made on the twenty-fourth day of August, 1922. It is further alleged in said answer and return that it is the intention of the respondent judge, unless prohibited from so doing by this court, to determine and grant the defendant's motion for a suspension of said injunction pending appeal, said order for suspension to be contained in the judgment hereafter to be entered in said action or to be made concurrently with the entry of said judgment and to continue pending an appeal to this court, and that it is his intention in making such order to impose upon the defendant such terms and conditions as to him may seem just and equitable, and which terms and conditions will, in his opinion and judgment, provide adequate security for compensating the said complainants for any damage or loss they may suffer by reason of such operations by said defendant pending appeal, in the event that such judgment should be affirmed on appeal or the appeal therefrom be dismissed. It is further alleged that in the trial of said action many complicated questions of law and of fact were involved and were presented to the trial judge; that he has decided such issues of law and fact in accordance with his best judgment; that he is of the opinion and believes that the defendant district is advised by its counsel that it has good and meritorious grounds of appeal from the judgment to be entered against it, and that he believes the said district intends in good faith to prosecute such appeal; that he believes that a number of questions of law and fact decided and found by him in his findings and conclusions on file and material to said judgment are novel and that the said district should in justice and equity have an opportunity to test the correctness of said judgment by taking an appeal therefrom. The respondent judge further alleges that after a careful consideration of all the

evidence in the case "if an injunction absolutely restraining defendant from taking water by means of wells and pumps from the Rancho de Kaweah, or otherwise, as directed by the conclusions of law filed in said action and as intended to be incorporated in the decree to be made and entered in said action, shall be enforced pending an appeal by said defendant from such judgment, any appeal by said defendant from such judgment would be entirely nugatory and without value to said defendant." It is further alleged that the lands within the defendant district require water for irrigation in order to make them productive or valuable for any purpose other than pasturage; that said lands are highly developed, the greater part thereof being planted to citrus trees which cannot be grown or maintained without sufficient water for irrigation; that said lands so planted to citrus trees, aggregating 9,000 acres or thereabouts are of the value of $1,250 an acre if supplied with sufficient water, but without water for irrigation would be of not to exceed $50 an acre; that other lands within said district are planted to valuable crops which require irrigation; that there is no adequate supply of water within said district for the irrigation of said lands and that there is no available supply elsewhere which could be developed and brought to said lands within many months, or at all, if such decree of injunction shall be enforced immediately and remain effective; that if such injunction be put into force and effect pending an appeal from said judgment the defendant district will during the pendency of such appeal be unable to supply adequate water within said district to irrigate the trees, plants, and crops growing thereon; that the citrus and other trees growing upon the irrigated part of said lands in said district will die and be destroyed, the majority of the lands within said district will become arid and waste, and the plant and system for the pumping and transporting of water from the Rancho de Kaweah to said district and for the distribution thereof to said lands within said district, constructed by the district at a cost of $1,600,000 or thereabouts, will be rendered useless and of little or no value. It is further alleged that if said injunction be put in force and effect during the pendency of said appeal and the said district should succeed in obtaining a reversal of said judgment, such reversal would be utterly useless and without value or benefit to the ap-

pellant. It is also alleged that from a consideration of all
the evidence in the case the respondent judge believes that
the loss and inconvenience which would be suffered by the
complainants in said action from the continuation of the
pumping by the defendant during the pendency of said
appeal under proper terms and conditions to be imposed
as a part of any order suspending said injunction would be
relatively small as compared with the loss and damage to
the district from the enforcement of such an injunction pend-
ing an appeal, and that such loss and damage to complain-
ants for the period of the pendency of the appeal could
be compensated in money and the payment of such com-
pensation could be adequately secured; that the respondent
judge is informed and believes that a suspension of the
operation of such injunction pending an appeal would not
destroy any right of the complainants, or any of them, es-
tablished or protected, or to be established or protected by
the judgment so to be entered.

The petitioners contend that the respondent court is wholly
without jurisdiction to make said order. [1] The question
therefore is: Has the superior court the power, in the exer-
cise of a sound discretion, to suspend the operation of an in-
junction to which it has decided the plaintiff is entitled,
pending an appeal from the judgment?

[2] It is conceded by all parties that there is no statu-
tory authority in this state for the exercise of such power.
[3] It is also conceded that, where not prohibited by stat-
ute, the superior court, under section 5 of article VI of the
constitution, has all the jurisdiction in equity which was
possessed by the English courts of chancery on July 4, 1776.
Prior to 1772 the courts of chancery of England did not
exercise the power to suspend proceedings in equity pending
appeal for the reason that the taking of the appeal had that
effect. But since that time the contrary rule has prevailed.
(*Hovey* v. *McDonald*, 109 U. S. 150, 160 [27 L. Ed. 888,
3 Sup. Ct. Rep. 136, see, also, Rose's U. S. Notes].) The
modification of the rule was brought about by the exercise
by the chancery courts of the power to enforce their judg-
ments, orders, and decrees, or some portions thereof, not-
withstanding the appeal. In 1807 a committee of the House
of Lords was appointed to inquire into decrees in equity and
reported: "That according to very ancient practice in this

House, appeals to this House were considered by the House as staying proceedings in the courts of equity; the orders, judgments, or decrees, of which had been called in question by such appeals; and that such practice in very remote times might obtain without much inconvenience in the administration of justice. The committee however finds, that for a very long course of years past the courts of equity have never forborne to proceed notwithstanding appeals against their orders, decrees, or judgments; and with knowledge, that such appeals had been lodged in this House; except in cases, in which their judicial discretion has induced them upon the application of parties interested to stay or modify such proceedings on account of such appeals; and that such habitual practices of the courts of equity have frequently and repeatedly fallen within the knowledge and under the observation of this House; whilst the appeals were depending therein. The committee therefore conceive, that according to the present practice of this House, appeals do not stay proceedings in such courts in the causes in which the appeals are made; and that such causes may be proceeded on in the courts of equity; unless such courts should make order thereon to the contrary in causes, in which they may be applied to for that purpose; or unless in special cases this House should interpose by special order; and the committee, attending to the nature of proceedings in courts of equity, and the numerous appeals, which in each cause may be lodged in this House against the orders and decrees of the court, and the effect, which the suspension by appeals of their  proceedings must have, are of opinion, that the practice as now understood, cannot be departed from without introducing consequences the most oppressive to the suitors · in courts of equity, and the utmost inconvenience in the administration of justice in such courts." This report was agreed to by the House of Lords (*Waldo* v. *Caley, Willan* v. *Willan,* 16 Ves. Jr. 206, 216 [33 Eng. Reprint, 962, 966]). Lord Chancellor Eldon refers to the rule in the following language: "Now however it is settled by the highest authority, that of the House of Lords itself, that an appeal from a court of equity to that House does not stay execution of the decree; but it is consistent with that regulation, that a special application may be made either to the House of Lords, or to the court below; with this observation: that it is much

more expedient, that the application should, if it can, be made to the House, than to the court below; as the order upon that occasion, may be the subject of appeal; and it is difficult to determine how far appeals may go." (*Hugeunin* v. *Baseley,* 15 Ves. Jr. 180 [33 Eng. Reprint, 723].)

It therefore appears that "for a long course of years" prior to 1807 the English courts of chancery exercised the power to stay proceedings in equity pending appeal. The petitioner has cited no case or historical treatise, and we have discovered none, which holds or indicates that such power was not exercised as early as 1772 and we find no authority for holding that they did not possess that power more remotely even though they did not exercise it. Indeed, as early as 1697 it is intimated in *Horner* v. *Popham,* 1 Eng. Reprint, 152, that on an appeal from the House of Lords to Parliament, the House of Lords would have authority to stay proceedings in equity pending appeal. In speaking of the English chancery practice it is stated in Daniel's Chancery Pleading and Practice (6th Am. ed.), at page 1469, that an appeal does not stop or hinder any proceedings on the decree or order appealed from *unless by special order of the court*. It is further stated that the court will in some cases upon special application of the appellant suspend the proceedings under a decree pending an appeal.

The Earl of Halsbury, Lord High Chancellor of Great Britain for nearly twenty years, says in his work on the Laws of England, volume 17, page 211, section 465, under the title "Injunction": "An appeal does not operate as a stay of execution or of proceedings under the decision appealed from, except so far as the court appealed from or any judge thereof or the court of appeal may direct; and no intermediate act or proceeding will be invalidated except so far as the court appealed from directs. . . . If irreparable damage will be done to the appellant in the meantime, the operation of the injunction may be stayed on terms."

The purpose of the stay or postponement of the effective date of the injunction is to protect appellant from having his right of appeal rendered nugatory or merely nominal if he should succeed. (*Monkhouse* v. *Corporation of Bedford,* 17 Ves. Jr. 380 [34 Eng. Reprint, 147]; *Walford* v. *Walford,* L. R. 3 Ch. App. 812; *Polini* v. *Gray,* 12 Ch. Div. 438.) The last case cited was an equitable action to determine the

rights of claimants to a fund. The plaintiffs failed in the
court of first instance and prosecuted an appeal. They con-
tended that if they should ultimately succeed in the House
of Lords that success would be useless to them unless an
interim order were made for preserving the fund. Assum-
ing the contention to be correct, the court said: ''The ques-
tion is, whether this court has jurisdiction to prevent such
a consequence. It appears to me on principle that the court
ought to possess that jurisdiction, because the principle
which underlies all orders for the preservation of property
pending litigation is this, that the successful party in the
litigation, that is, the ultimately successful party, is to
reap the fruits of that litigation, and not obtain merely a
barren success. That principle, as it appears to me, applies
as much to the court of first instance before the first trial,
and to the court of appeal before the second trial, as to
the court of last instance before the hearing of the final
appeal.'' (See, also, *Attorney-General* v. *Colney Hatch
Lunatic Asylum,* 4 Ch. App. 146; *Attorney-General* v. *Pro-
prietors of the Bradford Canal,* 2 Eq. Cas. 71; *Shelfer* v.
*City of London Electric Lighting Co.,* 2 Ch. 388.)

It has been generally held by the courts of the United
States and by the courts of the several states where the mat-
ter is not controlled by statute that courts of equity possess
the power here contended for by the respondents. In recog-
nition of such power the supreme court of the United States
in 1878 promulgated the rule wherein it provided that:
''When an appeal from a final decree, in an equity suit,
granting or dissolving an injunction, is allowed by a justice
or a judge who took part in the decision of the cause, he
may, in his discretion, at the time of such allowance, make
an order suspending or modifying the injunction during
the pendency of the appeal upon such terms as to bond
or otherwise as he may consider proper for the security
of the rights of the opposite party.'' (*Hovey* v. *McDonald,*
109 U. S. 150, 161 [27 L. Ed. 888, 3 Sup. Ct. Rep. 136, see,
also, Rose's U. S. Notes].)

The respondents have cited numerous other cases which
support their contention. Quotations from them would ap-
pear to be superfluous. A citation of some of them will
suffice. (*Leonard* v. *Ozark Land Co.,* 115 U. S. 465 [29 L. Ed.
445, 6 Sup. Ct. Rep. 127]; *In re Haberman Mfg. Co., Peti-*

*tioner,* 147 U. S. 525 [37 L. Ed. 266, 13 Sup. Ct. Rep. 527];
*American Strawboard Co.* v. *Indianapolis Water Co.,* 81
Fed. 423 [26 C. C. A. 470]; *Interstate Commerce Com.* v.
*Louisville & N. R. Co.,* 101 Fed. 146; *Green Bay & M. Canal
Co.* v. *Norrie,* 118 Fed. 923; *Green* v. *Winter,* 1 Johns. Ch.
(N. Y.) 77; *Schenck* v. *Conover,* 2 Beas. (N. J.) 31; *Riehle*
v. *Heulings,* 38 N. J. Eq. 83, and note; *McAlpin* v. *Univer-
sal Tobacco Co.* (N. J. Ch.), 55 Atl. 999; *Davis* v. *Tarwater,*
13 Ark. 52; *Thompson* v. *M'Kim,* 10 Md. 249 (302); *Genet*
v. *D. & H. Canal Co.,* 113 N. Y. 472 [21 N. E. 390]; *Genin*
v. *Chadzey,* 12 Abb. Pr. (N. Y.) 69; *Howe* v. *Searing,* 19
How. Pr. (N. Y.) 14; *Pach* v. *Geoffroy,* 65 Hun, 619, 19 N. Y.
Supp. 583; *Laney* v. *Rochester Ry. Co.,* 81 Hun, 346, 30
N. Y. Supp. 893; *Remsen* v. *Metropolitan El. Ry. Co.,* 17
App. Div. 637, 45 N. Y. Supp. 536; *Tenement House Dept.*
v. *Molschen,* 41 Misc. Rep. 446, 85 N. Y. Supp. 19; *State ex
rel. Burrows* v. *Superior Court,* 43 Wash. 225 [86 Pac. 632];
*Lund* v. *Idaho & W. R. R. Co.,* 48 Wash. 453 [93 Pac. 1071];
*Waters* v. *Dunn,* 18 Idaho, 45 [110 Pac. 258].) But the case
of *State ex rel. Burrows* v. *Superior Court, supra,* is so di-
rectly in point both as to the law and the facts as to entitle
it to particular notice. It was an application for a writ of
prohibition to prevent the superior court of the state of
Washington from entering an order suspending a prohibi-
tory injunction pending an appeal to the supreme court.
The plaintiffs in the pending action were the owners of an
improved stock farm through which a navigable fresh-water
river flowed. The defendants maintained a log boom on
the river below the farm which at times obstructed the flow
of the river so as to back up the water and cause the same
to overflow the farm lands. The plaintiff brought an ac-
tion to perpetually enjoin the defendant from maintaining
the obstruction. After trial on the merits the court an-
nounced its findings and conclusions in favor of the plain-
tiffs. Before findings and conclusions were signed and filed
and before judgment was entered the defendants applied to
the trial court for an order suspending the injunction pend-
ing appeal. The trial judge announced that he would make
such an order on terms, but delayed making it pending an
application to the supreme court for the writ of prohibition.
The findings of fact and conclusions of law and the decree
were then signed and entered. It was conceded, as it is

here conceded, that there was no statute authorizing the trial court to grant such a stay. It was contended by the respondent superior court, as it is urged by the respondents here, that independent of the statute the trial court, by virtue of its equity jurisdiction, had inherent power to suspend the operation of the injunction pending the appeal. The court said: "The power of the trial court in this respect is the question presented upon this hearing. This court has repeatedly held that the trial court would not be required by mandate to order a stay or fix a bond which should operate to supersede a prohibitory injunction pending appeal, and that a statutory *supersedeas* could not stay such decree. [Citing cases.] . . . The trial court in this case is a court of general equity jurisdiction. . . . It has all the powers of the English chancery court, and may grant and enforce its decrees in such manner as the justice of the particular case requires. The power of suspending the operation of injunctive decrees has frequently been exercised by courts of general chancery jurisdiction. [Citing cases.] . . . We have no doubt of the inherent power of a court of original jurisdiction to grant a suspension of injunctive decrees pending appeal, when justice may require it, and where the status of the parties is not changed, providing such right is not taken away by statute. Our statute does not deny such power." The writ of prohibition was denied.

In 22 Cyc., at page 970, under the title of "Injunctions," the writer says: "The court may in its discretion suspend the operation of an injunction. It may in the very decree itself provide that the operation of the injunction shall be stayed for a certain length of time or until the happening of a condition, and it is within the discretion of the court to stay the operation of the decree pending an appeal therefrom, until the hearing of the appeal on the merits." (See, also, 32 C. J. 388; 38 L. R. A. (N. S.), note, p. 440 et seq., and cases cited.)

It must therefore be said that the chancery courts in England have from an early day exercised the power to suspend or stay injunctions until an appeal may be heard and determined. It must also be said that courts of equity in the United States, both state and federal, when uncontrolled by statute, have exercised the same power. It follows that the superior court in this state likewise possesses that power.

The petitioner contends that the case of *United Railroads* v. *Superior Court,* 170 Cal. 755 [Ann. Cas. 1916E, 199, 151 Pac. 129], denies such power in the superior court, but such is not the case. In that proceeding it appeared that the superior court in an injunction suit pending before it had granted, on application of the plaintiff, a preliminary injunction pursuant to section 527 of the Code of Civil Procedure, restraining the defendant from performing certain acts during the pendency of the action. Thereafter and before the trial of the cause on its merits the defendant made application to that court for an order "staying the operation of the preliminary injunction" theretofore issued "until the final and full determination" of the cause. The plaintiff then filed a petition in this court for a writ of prohibition to restrain the superior court from entertaining and passing upon the defendant's application. As stated in the opinion the only question presented for determination by the court was this: "In view of the provisions of our law, constitutional and statutory, has a superior court, which, by order duly and regularly made upon notice and hearing, has granted a temporary or provisional injunction absolutely restraining a defendant from the commission of certain acts during the pendency of the action, without reserving any right of revocation or modification, the power to subsequently make an order staying the operation of said injunction until the final determination of the cause, or until a contemplated appeal from said order has been heard and determined?" The question was answered in the negative and the court said: "It is declared by our Civil Code that 'provisional injunctions are regulated by the Code of Civil Procedure' (Civ. Code, sec. 3421). By sections 525 to and including 533 of the Code of Civil Procedure, in a title headed 'Provisional Remedies in Civil Actions' there is provided a full and complete system of law and procedure as to granting, refusing, modifying and dissolving temporary injunctions. It is clearly and unequivocally provided therein in what cases such an injunction may be granted and in what cases it may not be granted; . . . From what we have said as to *our statutory provisions* on the subject of such injunctions [temporary injunctions], it is manifestly our opinion that they unequivocally have the effect of precluding

any such exercise of power on the part of the trial court.''
(Italics added.)

It is strongly intimated in the above-quoted question which
this court framed as the only one for determination, that
if the order for the preliminary injunction had contained a
provision reserving to the court the right to revoke or mod-
ify the preliminary injunction which it was then ordering,
such power could have been reserved. We do not decide
that question, for it is not involved here, but the intimation
fortifies the conclusion that the only theory upon which that
case was decided was that in view of *our statutory provisions*
regulating and providing a ''full and complete system of
law and procedure as to granting, refusing, modifying and
dissolving temporary injunctions,'' and without reserving
to itself the right to revoke or modify such an injunction,
the court's power in the premises had spent its force and
been exhausted.

Further with reference to the scope of our code provisions
relating to injunctions it is said in 14 Cal. Jur., at pages
296 and 297: ''The code provisions regulating injunctions
do not curtail the general grant of equity power vested in
the superior courts by the constitution nor affect their gen-
eral chancery power to preserve the fruits of a possibly
successful litigation to appellants from an adverse judgment
against them. It follows that the superior court has equi-
table jurisdiction at the time of rendering judgment for the
defendant, either to continue in force a preliminary injunc-
tion so as to maintain the *status quo* of the subject matter
of the litigation pending an appeal, or to make an original
injunction order at such time restraining the successful
party pending such appeal from interfering with appellant's
property, notwithstanding the right to a perpetual injunc-
tion, which was the primary object of the action, may be
denied by the judgment itself.'' This statement is sup-
ported by the citation of authorities in this state but is
based particularly on the leading case of *City of Pasadena*
v. *Superior Court*, 157 Cal. 781 [21 Ann. Cas. 1355, 109
Pac. 620]. Both the petitioners and the respondents herein
cite and rely on that case. The petitioners contend that
the rule laid down there is exclusive, that is to say, that
it sanctions the power of the superior court to enjoin the
defendant pending an appeal where a permanent injunction

is denied, but that it does not constitute and impliedly denies authority in the superior court to suspend the operation of a permanent injunction pending an appeal from a judgment in favor of the plaintiff. The respondents contend that there is no distinction in principle between staying the hand of the defendant in behalf of the plaintiff when the court has decided that the plaintiff is not entitled to an injunction and staying the hand of the plaintiff in behalf of the defendant when the court has decided that the plaintiff is entitled to an injunction, and that in each case the power is referable to the same equitable jurisdiction of the trial court. We agree with the respondents that there is no distinction between the power exercised by the court in the Pasadena case and the power which the respondents herein intend to exercise. Lord Justice Cotton said in the case of *Polini* v. *Gray,* 12 L. R. Ch. Div., at page 446: "I see no difference in principle between staying the distribution of a fund to which the court has held the plaintiff not to be entitled, and staying the execution of an order by which the court has decided that the plaintiff is entitled to a fund." That there is no such distinction may be readily comprehended if it be assumed that the parties to the action pending in the respondent court be reversed. In other words, let it be supposed that the Lindsay-Strathmore Irrigation District, feeling itself aggrieved because of a threatened interference with its water supply on the part of the Tulare Irrigation District, had brought an action for a permanent injunction to restrain the latter from interfering with the rights of the plaintiff and upon a trial on the merits the court should have found that the plaintiff was not entitled to an injunction and should dissolve a temporary injunction theretofore issued. In such a case it would readily be conceded under the authority of the Pasadena case that the trial court would have jurisdiction to issue an injunction to restrain the defendant from a threatened interference with the plaintiff's rights pending appeal. The same result would be accomplished as is intended to be accomplished in the action now pending where the parties are reversed, namely, to preserve from destruction the property of the appellant pending final determination of the case on appeal. [4] It should be remembered that we are here dealing with a question of jurisdiction, for it is the sole province of the

writ of prohibition to arrest proceedings of an inferior tribunal or persons exercising judicial functions when without or in excess of jurisdiction (Code Civ. Proc., sec. 1102; 21 Cal. Jur. 583, and cases cited). [5] It would appear self-evident that the question of jurisdiction would not depend upon which litigant happened to get into court first. There is, therefore, no doubt that the court may exercise its jurisdiction regardless of which party is the plaintiff or the defendant, and that the equitable jurisdiction is the same in the one case as in the other.

To his findings of fact the respondent judge appended his conclusions of law wherein he decided that the complainants were "entitled to a judgment and decree of this court, determining their respective rights, as aforesaid, and to a perpetual injunction of this court forever enjoining and restraining the said defendant," etc., but, as above noted, no such judgment or decree has been entered. It is the contention of the petitioners herein that the signing of the decree in accordance with the findings and conclusions is merely a ministerial act and that no decree may now be signed and entered except in strict conformity with said conclusions of law. [6] In ordinary actions at law it is, of course, the rule that the signature of the judge is not necessary to the validity of the judgment (14 Cal. Jur. 914, and cases cited), but "it has been the almost invariable custom in this state for decrees in equity to be so signed." (*Byrne* v. *Hoag,* 116 Cal. 1, 5 [47 Pac. 775]). [7] Ordinarily the judgment or decree is ineffectual for any purpose until entered (sec. 664, Code Civ. Proc.; *Consolidated Const. Co.* v. *Pacific Elec. Ry. Co.,* 184 Cal. 244 [193 Pac. 238]; 14 Cal. Jur. 937). Until the decree is entered it is merely a purpose in the breast of the court and may be changed as the judge may determine (14 Cal. Jur. 916). Indeed, at any time before the entry of the decree the court may change its conclusions of law upon the facts that have been found (*Condee* v. *Barton,* 62 Cal. 1; *Crim* v. *Kessing,* 89 Cal. 478, 489 [23 Am. St. Rep. 491, 26 Pac. 1074]). [8] If, therefore, it be essential to the validity of the decree intended to be entered by the respondent judge that the conclusions of law specify the effective date of the said injunction as upon the determination of the appeal favorable to the respondents, the court would have jurisdiction to change its conclusions of law accord-

ingly for no judgment or decree has yet been entered. But in our view of the matter such a change would be unnecessary, especially as affecting the result of the present proceeding, for two reasons; first, because any alleged inconsistency between the conclusions of law and the judgment may be remedied only by a direct attack on the judgment (*Crim* v. *Kessing, supra*), and not by prohibition which is a collateral proceeding, subject to the rules governing a collateral attack excepting in cases not material here (21 Cal. Jur. 604), and, secondly, if the said decree be entered in exact conformity with the conclusions of law the court would have the power by a, separate order made concurrently with the entry of the decree staying the injunction pending appeal and such order, while strictly not a part of the decree, would be in effect a part thereof and operate concurrently therewith (*City of Pasadena* v. *Superior Court, supra; United Railroads* v. *Superior Court, supra,* 764).

The petitioners further contend that the making of the contemplated order will not preserve the *status quo* of the subject matter of the litigation but will preserve a condition which the defendant district has deliberately created since the action was commenced. This contention is based on the fact that additional wells were bored on the Rancho de Kaweah, expensive improvements were constructed by the defendant district and vast improvement of land areas took place after the commencement of said litigation. The contention is also based on the rule that ordinarily when the *status quo* is referred to the status at the commencement of the action is in contemplation. The respondents insist that this rule should not be applied to the situation of the defendant district for the reason that numerous parties complainant in said action were not parties thereto until long after the completion of the works by the defendant and that the asserted rule should not operate to the benefit of those who were not in litigation with the defendant district until after the said works were completed. **[9]** It is unnecessary to here solve that problem for, assuming that the rule as contended for by petitioners is correct, it is not invariable as an examination of the authorities discloses. Concerning the rule that should apply in a proceeding identical with the present one the supreme court of Washington said in *State ex rel. Burrows* v. *Superior Court, supra*: "Justice to the

litigants usually requires that the status of the parties at the time of the judgment should be maintained pending appeals." (See, also, *Chester Traction Co.* v. *Philadelphia W. & B. R. Co.*, 174 Pa. St. 284 [34 Atl. 619].) This is especially true when no preliminary injunction was sought by the plaintiffs until some five years after the commencement of said action (*Johnson* v. *Seabury & Johnson*, 69 N. J. Eq. 696 [61 Atl. 5], since the legitimate function and purpose of a preliminary injunction is to preserve the *status quo* until, upon final hearing, the court may grant full relief (Beach on Injunctions, sec. 112; *Powhattan Coal & Coke Co.* v. *Ritz*, 60 W. Va. 395 [9 L. R. A. (N. S.) 1225, 56 S. E. 257]). Where statutes have been enacted regulating or controlling the powers of the court concerning discretionary *supersedeas* on appeal in injunction proceedings it has been provided that "the status existing immediately before the entry of the judgment appealed from shall be maintained" (*Jones* v. *Walter*, 24 Ky. Law Rep. 878 [70 S. W. 191]). [10] We are in accord with the contention of respondents that the question of maintaining the *status quo* only arises in the consideration by the trial court of the rules which should guide it in the exercise of its discretion and does not go to the jurisdiction of the court to determine the question one way or the other. Other rules may also be considered by the trial court. Counsel for petitioners state that in the numerous cases examined by them with reference to the power of courts of equity to stay or suspend prohibitory injunctions pending appeal they find that such power was exercised under one or the other of the following conditions, or for one or the other of the following purposes: "1. To preserve the *status quo* as it existed at the commencement of the action; 2. To preserve the subject of the litigation pending the appeal; 3. The stay was authorized by express statute." It is thus impliedly conceded by petitioners that the preservation of the *status quo* as it existed at the commencement of the action is not the exclusive function of the order. [11] The function of the contemplated order sought by respondents may therefore reasonably fall within the second purpose, viz., to preserve the subject of the litigation pending the appeal. While, strictly speaking, the subject of the litigation as disclosed by the allegations of the complaint in the pending action is

the right of the defendant district to take water from the Rancho de Kaweah, but under the allegations of the answer in said action and the showing made by the answer and return herein the subject of said litigation includes also the preservation from destruction of the extensive property and works of the defendant district and the valuable improvements on the lands within the district; just as in the Pasadena case the subject of the litigation from the standpoint of the city was the naked right of the plaintiff in that action to maintain its telephone poles and wires in the streets of the city, but from the standpoint of the said defendants the preservation of its physical properties was also involved. From the trial court's standpoint under such circumstances the one right may not be considered apart from the other.

[12] Finally, it is contended by the petitioners that the making of the contemplated order will deprive them of their property without due process of law and without adequate compensation. Obviously there is no merit in this contention. The said action is still pending and will be deemed pending until its final determination on appeal (sec. 1049, Code Civ. Proc.). We, of course, express no opinion as to the merits of the appeal, but it may not be gainsaid that reversals do occur. For the purpose only of the consideration of this contention of the petitioners in this proceeding it may be said that the asserted rights of the petitioners may never be established. If they do not finally prevail it may not be said that they have presently such a vested right in the property in the litigation as may be protected under the due process clause of the fourteenth amendment and section 14 of article I of our constitution as against a valid order or judgment of the court finally deciding that their alleged claims are unfounded. This contention of the petitioners assumes that their rights have been finally adjudicated, which of course is a false premise, as such rights are still in litigation. A similar contention was made in *State ex rel. Burrows* v. *Superior Court, supra,* where it was held to be untenable. (See, also, 15 Cal. Jur. 121, 122.)

In his verified answer and return to the alternative writ herein the respondent judge states, as above noted, that in making the contemplated order he intends to impose upon the defendant and appellant such terms and conditions as to him may seem just and equitable and that such terms and

conditions will, in his judgment, provide adequate security for compensating the complainants on account of any damage or loss which the latter may suffer by reason of the operations of the defendant district pending appeal, in the event the judgment be affirmed or the appeal dismissed, and that without the contemplated order any appeal by the defendant "would be entirely nugatory and without value" to said defendant. He arrives at these conclusions "after careful consideration of all the evidence in the case." Contemplating the results which he sets forth as attending the consequences of an immediately effective injunction it may properly be said as was said in the Pasadena case (795): "Common fairness and a sense of justice readily suggests" that while the defendant in good faith is prosecuting its appeal it "should be in some manner protected in having the subject matter of the litigation preserved" until the appellate court can settle the controversy. [13] The exercise of the power which the respondents propose to exercise is "incidental to the right of appeal," and the contemplated order may be deemed a part of the injunction itself. (See *American Trading Co.* v. *Superior Court*, 192 Cal. 770, 772 [222 Pac. 142].) To recognize the constitutional right of the defendant to an appeal from the judgment and at the same time to deny the right of the trial court, which it unquestionably possesses in the action pending before it, to prevent the appeal from becoming nugatory would be in effect to deny the right of appeal.

It is unnecessary to pass upon other points raised by the parties in view of the conclusions herein expressed.

The peremptory writ is denied and the proceeding is dismissed.

Myers, C. J., Waste, J., Lawlor, J., Seawell, J., Lennon, J., and Richards, J., concurred.