## MOORE v. PATCH, Tax Collector.

The provisions of the Revenue Act of 1857, which requires the Tax Collector to publish the Delinquent Tax List, giving the name of the owner (when known) of all real estate, and the improvements, together with a condensed description of the property, etc., are not conditions precedent to the vesting of the tax. The obligation to pay the tax does not exist by the force of these provisions. The tax is a debt due from the property holder to the State, and these proceedings by publication, etc., are merely modes adopted by the Legislature to collect them. If the property be omitted from the delinquent list, this does not discharge the property holder, but the defect may be remedied by the Legislature.

Where the Legislature passed an Act to remedy the failure on the part of the Tax Collector to publish the names of the owners, together with a list of the property, such Act cannot be defeated upon the constitutional ground that it is not uniform in its operation. Such Act is not general, but special, and is passed to meet a given state of facts, and, consequently, that provision of our Constitution which provides that "All laws of a general nature shall be uniform in their operation," does not apply.

Taking the third section of the Act of 1858, together with the first section, it is evident that the intention of the Legislature in the passage of the Act of 1858, was to substitute the assessment roll for the delinquent list required by the Act of 1857, or, rather, to give full and complete effect to that list as a valid warrant for the collection of the taxes therein mentioned, and then to provide, as is done in section three of that Act, for their collection.

The Act of 1858, dispensing with the publication required by the Act of 1857, also dispensed with the proof of that fact.

Appeal from the Twelfth District, County of San Francisco.

The plaintiff filed his bill in the Twelfth District Court, to restrain the defendant, Tax Collector of the City and County of San Francisco, from selling certain property of plaintiff, described in his complaint. A temporary injunction was first ordered, and, on a final hearing, the same was made perpetual by a decree of said Court. From that judgment the defendant appeals to the Supreme Court. The facts necessary to explain the decision appear in the opinion of the Court.

*Shafter, Park & Heydenfeldt* for Appellant.

I. Does the Act of 1858 by its terms undertake to legalize the assessment roll so far as to authorize the sale of real estate for taxes, where there was in fact no advertisement under the Act of 1857.

17

The Act was approved January 30th, 1858, and it "confirms" the roll "in the hands of the Tax Collector," and "declares it to be legal and binding as a good and valid Tax List, and in all respects sufficient in law as the duplicate assessment list of said city and county for the fiscal year ending June 30th, 1858; and the same is and shall be a sufficient warrant in the hands of the Tax Collector to authorize and empower him to collect the taxes therein assessed."

The language is broad enough to comprehend every description of irregularities, whether committed by the Assessor, the Board of Equalization or Tax Collector.

But, notwithstanding the clear import of the language used, the counsel for the plaintiff insists that it could not have been the intention to dispense with the publication of the delinquent list under the Act of 1857, or, rather, it is contended that the Act of 1858 assumes that such list had been published; and the conclusion is, that where a delinquent tax list was not so published, in fact, it could not be collected under the Act of 1858.

But the Act of 1858 nowhere assumes that a perfect delinquent list had been previously published, nor does it assume that an imperfect one had been published, or make any allusion to any attempt at publication previously made. The position that the Act of 1858 goes upon the supposed assumption in question, is then entirely without foundation.

But, it is said that the Legislature must have assumed a publication of a perfect delinquent list, for the reason, that without such publication the Tax Collector could not make oath as required by sec. 24 of the Act of 1857.

True, he could not; but the answer is, that the Act of 1858 suspends the operation of the Act of 1857 in a particular locality and for a single year. It begins by curing all defects in the assessment roll, and makes the duplicate, notwithstanding those defects, a valid warrant for the collection of all taxes delinquent on its face. The Collector is then (sec. 3) to give notice of ten days through the newspapers, that he will proceed to collect, etc. There is no pretense but that this new form of publication was complied with to the letter. Now, this new mode supersedes, or at least temporarily suspends, the operation of the old one; and the oath required by section 24 of the Act of

Moore *v.* Patch.

1857, being collateral merely to the mode, is also superseded or suspended.

The general notice then prescribed by the Act of 1858, taken in connection with what the plaintiff knew all along by necessary intendment, meets all just demands growing out of the maxim that " No man should be condemned without a hearing."

II. But it is contended that the Act of 1858 is unconstitutional, on the ground that it is retrospective and divests vested rights.

The Act more properly enforces " vested " obligations.   Rights may be divested for public uses, and under proper conditions.   However absolute the plaintiff's title may have been to his property, it was no more absolute than his duty to pay his taxes ; and if, on the whole, he has been fairly dealt with by the Legislature in the matter of notice, he has had all that any citizen can claim as against the public.

It is said, that where the statutes make certain steps conditions precedent to the right to sell, and those steps are not taken, the Legislature has no power to order a sale thereafter on a different set of conditions.

To this we answer, that a failure of the first set of conditions does not, in the case of a tax, absolve the tax-payer.   It has never been so regarded here or elsewhere.   There has always been a provision in our revenue laws, by which a delinquent's taxes have been conserved and carried forward into the roll of the ensuing year, and the power to collect them has never been considered as lost for the reason that proper steps were not taken to enforce their collection during the year for which they were levied.   Still, we do not believe, and therefore do not say, that the Legislature, after the plaintiff had effectually slipped through the Act of 1857 for that year, could compel him to pay his taxes at once by edict; and if the Act of 1858 is a sentence rather than a law, it may be open to objection.   But it is a law ; it gives all delinquents a new hearing ; it provides for the reissuing of a public document in which the results of such new hearing are to be noted, and it provides for publication of ten days before property can be sold. These conditions are varied in some respects from those named in the Act of 1857, but they are just, reasonable, and beneficial to the tax-payer, and the power of the Legislature to prescribe them follows from

Moore *v*. Patch.

the fact that the tax was unpaid after all, and that the duty to pay it still subsisted.   If the duty remained, then the right to enforce its performance remained also.   The power being given, the only question that can be made is on the mode in which it was exercised, and that mode, whether it is like or unlike a former one, should be upheld if it is not opposed to any constitutional provision or any rule of universal justice.

As to the charge that the Act of 1858 is retrospective, see Yosher *v*. Stonington, 4 Com. 209; Mather *v*. Chipman, 6 Com. 54; Beach *v*. Walker, 6 Com. 197; Norton *v*. Pettibone, 7 Com. 319; Watson *v*. Mercer, 8 Pet. 88; Smith on Stat. 409, 546.

But, it is said that the Act of 1858 is unconstitutional in view of the provision " That all laws of a general nature shall be uniform in their operation."

In the first place, the Act of 1858 is not a general law, but a particular one instead ; still it is not partial or invidious.   The Act lays down a uniform rule for the class of persons upon whom it was intended to operate, to wit, delinquent tax-payers in the City and County of San Francisco.

It is uniform as to the subject matter and parties to which it relates, and is therefore free from the constitutional objection in question. The Act of 1858 creates no new right in the Government, and imposes no new duty, but devises a new proceeding, remedial in its character, for the vindication of a right and the enforcement of a duty fully perfected, and still on foot when the Act was passed.

*Waller & Moore* for Respondent.

*First.* The defendant has neither caused to be published in any delinquent list, either the plaintiff, as owner of the property he threatens to sell, nor caused to be published a condensed, nor any description of that property, as assessed to any owner, known or unknown, nor as being delinquent for taxes unpaid.   Nor did he cause to be published for three consecutive weeks, nor for any other period of time, an advertisement of the time and place of sale of such property.

The defendant, therefore, had no warrant or authority of law for making such sale.

Moore v. Patch.

Such publication and advertisement are required by the Act of April 29th, 1857, (Laws of 1857, p. 325) entitled "An Act to provide Revenue for the support of the Government of the State," particularly by sections 14, 15, 16, 17, 20 and 24, of said Act.

*Second.* Such publication and advertisement are not dispensed with in the Act of January 30th, 1858, (Laws of 1858, p. 4) entitled "An Act to Legalize the Tax List, or Assessment Roll, of the City and County of San Francisco," etc.

Nor could tax sales to be made under the same, be effectual to convey a title to the purchaser, unless the publication and advertisement specified in sections 14 and 15 of the Act of 1857, had been made. Nor without this could the Tax Collector execute deeds to purchasers, nor take the oath required of him by section 24 of that Act, designed to perpetuate testimony in regard to sales.

The Tax Collector not having so published and advertised, has therefore no right to sell. Blackwell on Tax Titles, pp. 45, 47, 79, 80, 81, 254, 264 and 310.

*Third.* That the Act of 1858 was not intended to supersede sections 14 and 15 of the Act of 1857, as to notice and advertisement, will clearly appear from sections 16, 17, 20, and especially from section 24 of the Act of 1857, and comparing those sections with the Act of 1858.

In the Act of 1857 referred to, all the conditions precedent, on performing which the Tax Collector had a right to sell property for unpaid taxes, were minutely specified. Those conditions precedent, including the advertisement and notice by publication, were to be performed before the fourth Monday in November. A law passed after that date could not legally relate back, so as to dispense with those conditions precedent, to the prejudice of the individual, nor vary those conditions so as to inflict upon him, on account of a past omission, a penalty which did not exist at the time of the omission. See 1 Kent's Com., pp. 418–19–20 ; also, decision of C. J. Kent in Dash v. Van Vleck, 1 Johns. 447 ; 3 Dall, 391, 397 ; Decision, Story, C. J., 2 Gallis, 139 ; 5 Yerg. 320 ; Nelson v. Allen, 1 Yerg. 360 ; Constitution Cal., Comp. Laws, p. 42, sec. 16.

A tax is a debt owed by the individual to the State. Property is

the pledge or mortgage. (Blackwell on Tax Titles, pp. 40–1.) By what right, then, after the debt accrues, can the terms of foreclosure, advertisement and sale, be varied?

*Fifth.* The defendant has no constitutional right to sell this property. The Constitution of this State provides that "All laws of a general nature shall be uniform in their operation."

BALDWIN, J., delivered the opinion of the Court—FIELD, J., concurring.

The plaintiff below enjoined the Collector from proceeding to sell his lot for taxes. The ground is that they are illegal. The plaintiff charges that the delinquent list, published by defendant in the fall of 1857, and under the Revenue Act of that year, did not contain the name and property of plaintiff, as required by the fourteenth and fifteenth sections of that Act. An Act was passed by the Legislature in 1858, (Session Acts, p. 4). This Act confirms the roll in the hands of the Collector, and declares it legal and binding, as a valid Tax List, and in all respects sufficient in law, as the duplicate assessment of said county and city, for the fiscal year ending June 30th, 1858, and the same shall be a sufficient warrant in the hands of the Tax Collector, to authorize and empower him to collect the taxes therein assessed.

It is argued for the respondent that this Act, supposing it to cover the case, is unconstitutional. This idea seems to be founded on the supposition that the steps made necessary by the Act of 1857, are conditions precedent to vesting of the tax, and that no obligation to pay the taxes existed, except by force of these proceedings. This, however, is a mistake. The tax is a debt due from the property-holder to the State, and these proceedings by publication and the like, are merely modes adopted by the Legislature to collect them. If property be omitted from the list, this does not discharge the property-holder, but the defect may be remedied by the Legislature. The irregularities, of whatever character, occurring under the Act of 1857, were intended to be cured by the Act of 1858, and we think, if the provisions of the latter Act have been fully complied with, the property might be fully subjected to the payment of the tax.

Moore *v.* Patch.

The objection that the Act is not uniform in its operation, is without force. It is not a general law, but a special Act, made for a given state of facts. There is no necessity for it, except for the particular occasion, and to remedy the particular evil at which it is aimed, and we think it effectual for that purpose.

The more serious objection, however, is urged, that the delinquent tax list required to be published by the Act of 1857, was never published, and that this provision is not repealed by the Act of 1858. The third section of the Act of 1858, is as follows : " The Tax Collector shall, as soon as may be after receiving back the duplicate assessment list, as provided in the last section, give notice by advertisement, to be published by five insertions in two newspapers published in said city and county, that he will proceed to collect the delinquent taxes due on said list; and at the expiration of ten days after the publication of said advertisement, he shall proceed to sell the real estate on which the taxes remain delinquent, in the manner provided in an Act entitled 'An Act to provide Revenue for the support of the Government of this State,' approved April twenty-ninth, eighteen hundred and fifty-seven ; and he shall, in like manner, proceed to collect any taxes which may remain due upon personal property."

The fifteenth section of the Act of 1857, (p. 329 of the Session Acts) provides that on or before the fourth Monday in November, the Tax Collector shall cause the delinquent list to be published, giving, in said publication, the name of the owner (when known) of all real estate and the improvements, together with a condensed description of the property, that it may be easily known, and also a similar condensed description of any real estate or improvements assessed to unknown owners, and also the name of every party delinquent for any tax on personal property, and also opposite each name or description give the amount of taxes, including the costs, etc. If a newspaper be published in the county, the publication by this section required shall be made by one insertion one time per week, for three successive weeks, in some county newspaper. Said publication shall designate the time and place for commencing the sale, which time shall not be less than twenty-one days, nor more than twenty-eight days, from the time of the first publication.

Taking the third section of the Act of 1858 together with the first, it is apparent that the intention of the Legislature was to substitute the assessment roll for the tax list required by the Act of 1857 ; or rather, to give full and complete effect to that list, as a valid warrant for the collection of the taxes therein mentioned ; and then to provide, as is done in section three of that Act, for their collection. It was intended to be a plenary and complete plan for the taxes on that list.    This is evident, because, after saying that the list shall be a sufficient warrant for collecting those taxes, it provides for a specific mode of such collection, which was by advertising ten days.    It could not have been thought necessary to advertise the list, as in section fifteen of the Act of 1857, and, in addition, to make this latter advertisement.    Besides, it would be impossible to follow the directions of the Act of 1857, for the time prescribed had long before elapsed.    It has been seen that after the advertisement of the delinquent list directed to be made by the Act of 1857, a sale was to be had ; here a sale at a different time is directed to be made by the third section of the Act of 1858.    It would result, if we give the construction of respondent to these statutes, that no sale could be had under the Act of 1858 ; but, indeed, the Act would be wholly inoperative.    The provisions of the statute of 1858, therefore, are in direct conflict with the sections fourteen and fifteen of the Act of 1857, and the former must prevail. The whole question amounts to this : Taxes were due from sundry persons for the year 1857 ; these taxes were not paid.    A list of these taxes is made by the proper officers ; the Legislature has recognized and validated this list, and a special provision is made for their collection.    This provision is not a general law, but a special remedial Act ; not made to create any new obligation, but to enforce the original debt. The Government had the power to give this remedy.    It was intended to be a complete remedy for the given case.

We do not mean to say, that if these taxes were not due the Legislature could create any obligation for the payment.    But being due, and not collected at the proper time, they may be collected by such means as the Legislature has prescribed.    The respondent suggests that if this construction be right, that the twenty-fourth section of the Act of 1857 must fall, which requires the Tax Collector, in order to

preserve testimony, to make oath that he made the publication required by that Act. But if the publication, as therein required, is dispensed with, so is the proof of the fact. The accessory falls with the principal.

A general impression seems to prevail that no tax sale can be made which will be effectual to pass title. Without expressing any opinion on the facts of any given case, it may not be out of place to suggest that consequences of a serious character may result to owners of property, by a too confident reliance upon the idea that taxes may be left unpaid with impunity.

The judgment of the Court below is reversed, and cause remanded.