## GILLAN *v.* HUTCHINSON *et al.*

The Act of April 25th, 1855, for the protection of growing crops and improvements in the mining districts of this State, so far as it purports to give a right of entry upon the mineral lands of this State, in cases where no such right existed anterior to its passage, is invalid.

The Legislature has no power to take the property of one person and give it to another; nor can private property be taken for public use, unless compensation to the owner precede or accompany the taking.

This Act of 1855 seems to proceed upon the idea of an absolute and unconditional

right in the miner to enter upon the possessions of another for mining purposes, and the intention of the act was to limit this supposed right, and not to give a right of entry in cases where no such right previously existed.

Miners have no such absolute and unconditional right. The true rule is laid down in *Smith* v. *Doe* (15 Cal).

The defense relied on in the answer in this case being invalid, it was not error to refuse permission to amend after judgment sustaining a demurrer to the answer. Besides, the allowance of the amendment was matter of discretion, for the abuse of which only could this Court interfere.

APPEAL from the Sixteenth District.

The defense relied on was, the right of miners to enter upon the inclosure of plaintiffs, under the Act of 1855, stated in the opinion. The answer set up that the land was rich in minerals, that defendants had proceeded according to mining regulations, and especially according to the Act of 1855, to acquire their rights. Plaintiff demurred to the answer, as insufficient in law. Demurrer sustained, and a perpetual injunction granted against defendants, the Court refusing permission to amend, on the ground that the answer could not be so amended as to make it a defense to the action. Defendants appeal.

*Monson & Sunderland*, for Appellants.

1. The entire answer must be taken as true—the judgment having been rendered on demurrer to the answer.

2. The land is public mineral land, belonging to the United States, and as such, under the decision of this Court in the case of *Burdge* v. *Smith*, defendants had a right to enter upon the same, and dig for gold.

3. The Act of the Legislature of April 25th, 1855, authorized defendants' entry. The Legislature has the right to enact, that where a party has inclosed mineral lands belonging to the United States, any person may enter upon the same for mining purposes; and that the remedy of the party for said entry shall be such as is provided by the act.

4. The United States has permitted, and by its forbearance authorized, the State Legislature to enact laws regulating the public lands. If this proposition is correct, and the land inclosed by plaintiff was public mineral land, then defendants had the right to justify their entry by virtue of the authority given by the United States. In trespass *quare clausum*, one can justify under another's title, by showing that he acts by his authority. (*Dunlap* v. *Glidden*, 31 Me. 375; *Rawson* v. *Morse*, 4 Pick. 127.)

Gillan *v.* Hutchinson.

5. The plaintiff, as he alleges in his complaint, entered into possession of the land in question about September, 1858.   At this time the privilege of digging for gold upon the waste, public mineral land of the United States had been enjoyed by all for several years.   The United States—the owner of the land—could object to this privilege, and end it.   Does it follow that a stranger may, without right or title, take possession of this public land, so as to deprive parties of a privilege, to the enjoyment of which the owner does not object?   (*Barnstable* v. *Thacher*, 3 Met. 239–245.)

*Tod Robinson*, for Respondent.

No brief on file.

COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

This is an action to restrain the defendants from mining upon a small tract of land, containing about two acres, in the possession of the plaintiff.   The land is inclosed, and employed in the cultivation of fruit trees and garden vegetables.   It is situated in the mines, and the defendants threaten to enter upon it for mining purposes, having given bond in conformity with the provisions of the Act of April 25th, 1855, for the protection of growing crops and improvements in the mining districts of this State.   The validity of this act is the only question presented by the pleadings.   In the passage of the act, the Legislature seems to have proceeded upon the idea that the right of a miner to enter upon the possessions of another, for mining purposes, was absolute and unconditional, and the intention clearly was to limit the exercise of this supposed right, and not to give a right of entry in cases where no such right previously existed.   It is clear that, in this respect, the Legislatui e acted under a misapprehension of the law upon the subject.   We have repeatedly held that, as a general rule, the public mineral lands of this State were open to the possession and occupancy of every person desiring, in good faith, to enter upon the same for mining purposes.   But we have also held that there were exceptions to this rule, and the case at bar seems to be included in these exceptions.   The correct doctrine upon this subject was laid down in the case of *Smith* v. *Doe*, decided at the January term.   "It must not be understood," said the Court, "that within the limits of the mines all possessory rights and all rights of property not founded upon a valid legal title, are held at the mercy and

discretion of the miner. Upon this subject it is impossible to lay down any general rule, but every case must be determined upon its own particular facts. Valuable and permanent improvements, such as houses, orchards, vineyards, etc., should undoubtedly be protected, as also growing crops of every description, for these are as useful and necessary as the gold produced by the working of the mines. Improvements of this character, aud such products of the soil as are the fruits of toil and labor, must be regarded as private property, and, upon every principle of legal justice, are entitled to the protection of the Courts. But in all cases, it must be borne in mind that, as a general rule, the public mineral lands of the State are open to the occupancy of every person who, in good faith, chooses to enter upon them for the purpose of mining; and the examples we have given may serve in some measure to indicate the proper modifications of this rule, and the restrictions necessary to be placed upon the exercise of this right. It is the duty of the Courts to protect private rights of property, but it is no less their duty to secure, as far as possible, the entire freedom of the mines, and to carry out and enforce the obvious policy of the Government in this respect."

The act in question, so far as it purports to give a right of entry upon the mineral lands of this State, in cases where no such right existed anterior to its passage, is clearly invalid. The Legislature has no power to take the property of one person and give it to another; nor can private property be taken even for public use, unless compensation be made to the owner, and the authorities all agree that the compensation must precede or accompany the taking.

The Court did not err in refusing to allow the defendants to amend their answer. The defense upon which they relied was invalid, and we do not see how the result could have been changed by the desired amendment. Besides, the allowance of the amendment was a matter of discretion, the abuse of which could alone justify our interference.

Judgment affirmed.