[L. A. No. 18157. In Bank. Mar. 20, 1944.]

EDWIN J. MILLER, Appellant, v. CATHERINE A. McKENNA et al., Defendants; DANIEL B. FLENNER et al., Respondents.

Edwin J. Miller, in pro. per., and Ralph W. Miller for Appellant.

W. Verne Ahrens, Ernest M. Best, Ratzer & Bridge and Glenn A. Lane for Respondents.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, Adrian A. Kragen and John L. Nourse, Deputies Attorney General, J. H. O'Connor, County Counsel, and A. Curtis Smith, Deputy County Counsel, as Amici Curiae on behalf of Respondents.

SHENK, J.—The plaintiff sued to quiet title to 103 lots in the city of Los Angeles. His title is based on a sheriff's deed executed in pursuance of a mortgage foreclosure judg-

ment and sale. The defendants' claims of title depend upon the validity of certain tax deeds. The plaintiff recovered judgment quieting his title to all but ten of the lots. He appealed from that portion of the judgment quieting in the defendants the title to those ten lots.

Nine of the ten lots involved on the appeal were sold to the state in 1912 for delinquent 1911 taxes. In 1917 they were sold by the state at public sale to the highest bidders. The tenth lot was sold to the state in 1918 for delinquent 1917 taxes, and in 1923 was sold by the state.

The plaintiff claimed through a mortgage executed in 1915 and a sheriff's deed on foreclosure executed and recorded in 1937. The mortgage contained a waiver of the statute of limitations, and the validity of the mortgage and foreclosure was decreed in *Dexter* v. *Pierson,* 214 Cal. 247 [4 P.2d 932], and *Busing* v. *Pierson,* 1 Cal.2d 495 [36 P.2d 116].

By findings and judgment dated March 20, 1941, the trial court found and concluded that the publications of the 1911 and 1917 deliquent tax lists involving the ten lots were not in accordance with the statute and that the tax sales and tax deeds issued pursuant thereto were invalid. The court held that the notices of sale in 1911 and 1917 were fatally defective and therefore invalid for the reason that they omitted the word "penalties" in stating the amount due. In so holding the court was fortified by many cases in this court and the District Courts of Appeal directly in point. The case which may be deemed the leading case on the subject is *Bussenius* v. *Warden,* 71 Cal.App. 717 [236 P. 371] (1925), wherein it was held that a sale pursuant to a notice which, as here, omitted the word "penalties" in stating the amount due, was void. The same notice there and here involved was held to be void in *Snodgrass* v. *Errengy,* 86 Cal.App. 664 [261 P. 497] (1927). In *Wyser* v. *Truitt,* 95 Cal.App. 727 [273 P. 147] (1928), a similar notice was held insufficient to support a tax deed. The holding in *Bussenius* v. *Warden* was approved by this court in January 1929, in *Knoke* v. *Knight,* 206 Cal. 225 [273 P. 786]. Again in *Gramson* v. *Geniella,* 209 Cal. 610 [289 P. 817] (1930), this court approved the holding. To the same effect are *Redman* v. *Newell,* 114 Cal. App. 215 [299 P. 746] (1931); *Myran* v. *Smith,* 117 Cal.App. 355 [4 P.2d 219] (1931); *Rexon* v. *Gaffey,* 119 Cal.App. 389 [6 P.2d 534] (1931); *Langstaff* v. *Mitchell,* 119 Cal.App. 407 [6 P.2d 546] (1931); *Ayars* v. *Faust,* 131 Cal.App. 154 [20

P.2d 963] (1933); *Trozera* v. *McDonell,* 131 Cal.App. 473 [21 P.2d 706] (1933), and *Jones* v. *Walker,* 47 Cal.App.2d 566 [118 P.2d 299] (1941).

In *Bray* v. *Jones,* 20 Cal.2d 858 [129 P.2d 364] (1942), this court again recognized the correctness of the prior holdings by saying at page 862: ''The failure to set forth the amount due for penalties, emphasized by the statements in the notices that penalties were not included, was plainly in violation of the statute as it then read.''

Thus prior to the entry of judgment herein in 1941 the subject had been exhausted by the numerous holdings that the notices of sale here involved were invalid and that any tax deed issued thereunder was necessarily void. However the trial court further found and concluded that a ratifying statute adopted in 1929 was intended to and had the effect of curing the defects in those instruments. The original briefs on appeal (filed before the enactment of another curative act in 1943, which will be discussed later in this opinion) were devoted principally to the effect of the ratifying statute of 1929, the enactment of which appears to have been occasioned by the decision of this court in *Gottstein* v. *Kelly,* 206 Cal. 742 [276 P. 347].

At the time of the publication of the 1911 and 1917 delinquent tax lists and until 1929, section 3764 of the Political Code provided that the tax collector should ''publish the delinquent [tax] list, which must contain the names of the persons and a description of the property delinquent, and the amount of taxes, penalties and costs due'' opposite each name and description. In March 1929 this court decided the Gottstein case. In that case certain tax deeds were held void because the published delinquent tax list stated one amount opposite descriptions of several parcels of property in one ownership (to designate the total of taxes, penalties and costs on all of such parcels), instead of stating, as required by said section 3764, the amount of taxes, penalties and costs opposite the description of each parcel. It was also held that the notice of sale was not in accordance with the statute and was defective in that it did not state the amounts due for ''taxes, penalties, and costs'' as required by the statute, citing *Bussenius* v. *Warden, supra.*

Following the decision in the Gottstein case, the Legislature amended section 3764 of the Political Code, effective on the 23rd of the following May, to provide that the published delinquent list should contain, among other requirements, ''an

amount equal to the total amount of all taxes, assessments, penalties, and costs due.'' By a separate section of the act the Legislature declared that the amendment was ''not a change in, but a statement and declaratory of the law as the Legislature intended it to be by the terms'' of said section 3764 prior to amendment. It was further declared that all publications of delinquent lists ''failing to enter taxes, penalties and costs as separate entries but entering the foregoing amounts in one total sum and all sales, certificates of sale, tax deeds or other tax conveyances based upon such entries on any assessment roll or delinquent list are hereby confirmed, validated and legalized, and the same shall be construed and operate at all times and upon all occasions in law in the same manner as if such entries were separately set forth . . .'' Following the declaration of the immediate effect of the act was a statement of the facts constituting the necessity therefor, as follows: ''Due to the recent decision of the supreme court of the State of California in the case of *Gottstein* v. *Kelly*,'' the ''possible construction'' to be placed upon the pertinent requirements would be that taxes, penalties, and costs should be separately shown on the publication of delinquent lists and notices of sale; that ''inasmuch as the tax collectors of the state have completed preparatory work on the publication of the delinquent list which must be published on or before June 8, 1929, and great expense would be involved in the publication of the delinquent list to state as separate items the amount of taxes, penalties and costs due on property subject to tax sales and the possibility of error would be greatly increased, many tax titles acquired at tax sales would be jeopardized.''

A casual reading of the opinion in the Gottstein case might afford some justification for the apprehension of the Legislature, but a more careful study of it reveals that in no sense was it intended to be, nor could it properly be, an adjudication that a separate amount for each of the items of taxes, penalties and costs must be stated in the notice of sale. That question was not involved in the case. Its solution, as apprehended by the Legislature to be a ''possible construction'' of the statute by this court, would have been obiter and would have been unsupported by any decision in this state. It is conclusively shown by the language used in the 1929 act amending section 3764, that the Legislature did not intend to change the law so as to conform to the apprehended ''pos-

sible construction," but merely to declare, out of an abundance of caution, that the amendment did not work a change in the pre-existing law but was a continuation thereof. With this declaration we cannot be at odds for no case has been found in this state, either before or since the amendment of 1929, which held that a separate statement of the amount of each of the items of taxes, penalties and costs was essential to a valid notice of sale.

The curative provisions of the 1929 act appear to have been concerned only with the publication of delinquent lists or notices of sale which failed "to enter taxes, penalties and costs as separate entries but entering the foregoing amounts in one total sum," and with notices of sales and tax deeds based upon such entries. It may not be assumed that the Legislature thereby intended or attempted to validate tax deeds which were void for reasons not contemplated by the terms of the act. The 1929 enactment therefore had no effect upon the tax deeds here in question.

Pending this appeal and after the argument in the case the Legislature in 1943 adopted another curative act which it is claimed is much broader than the act of 1929 and has the effect of resuscitating the void tax deeds here involved and thus confirming title in the tax deed holders. The submission of the cause on appeal was set aside in order that the attorney general might file a brief as amicus curiae in support of the effectiveness of the 1943 act as a cure of the defects in the tax proceedings here under review. The recent enactment is chapter 458 of the Statutes of 1943. (Stats. 1943, p. 1993.) It became effective on August 4th and provides:

"Section 1. Every act and proceeding heretofore taken by any county, city and county or the officers thereof relative to the preparation, transmitting, computing, determining or fixing the budget or the tax rate or rates of any county or city and county, or to the assessment or equalization of property or to the levy of taxes thereon or to tax sales or certificates of tax sales, tax deeds or other conveyances resulting from such assessment, equalization and levy, are hereby confirmed, validated and declared legally effective.

"Sec. 2 (a) This act is limited to the correction of defects, irregularities and ministerial errors which the Legislature originally could have omitted from the statutory requirements of law under which the acts hereby confirmed, validated and declared legally effective were taken.

''(b) This act is limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions.

''Sec. 3. If any provision of this act or its application to any person or circumstances is held invalid, the remainder of the act and the application of its provisions to other persons or circumstances is not affected.''

The question then to be determined is whether the act of 1943 may be deemed to cure the defects in the prior invalid tax sales and thereby to validate a void tax deed executed pursuant thereto, under the facts here disclosed.

No doubt may be entertained of the general power of the Legislature to enact statutes to validate prior tax proceedings. Many cases recognize that power. (*Moore* v. *Patch,* 12 Cal. 265; *Cowell* v. *Doub,* 12 Cal. 273; *People* v. *Holladay,* 25 Cal. 300; *Wetherbee* v. *Dunn,* 32 Cal. 106, 108; *People* v. *McCreery,* 34 Cal. 432; *People* v. *Goldtree,* 44 Cal. 323; *Rollins* v. *Wright,* 93 Cal. 395 [29 P. 58]; *Haaren* v. *High,* 97 Cal. 445 [32 P. 518]; *Ramish* v. *Hartwell,* 126 Cal. 443 [58 P. 920]; *Chase* v. *Trout,* 146 Cal. 350 [80 P. 81]; *Baird* v. *Monroe,* 150 Cal. 560 [89 P. 352]; *Carter* v. *Osborn,* 150 Cal. 620 [89 P. 608]; *Peck* v. *Fox,* 154 Cal. 744 [99 P. 189]; *Imperial Land Co.* v. *Imperial Irrigation Dist.,* 173 Cal. 660 [161 P. 113]; *Schamblin* v. *Means,* 6 Cal.App. 261 [91 P. 1020]; *City of Santa Monica* v. *Los Angeles County,* 15 Cal. App. 710 [115 P. 945]; *Stuart* v. *Chapman,* 87 Cal.App. 552, 553. [262 P. 348].) And a proper validating act may be effective as to pending litigation. (Cooley, Const. Limitations, 8th ed., p. 787; *United States* v. *Heinszen & Co.,* 206 U.S. 370, 387 [27 S.Ct. 742, 51 L.Ed. 1098]; see, also, *Tulare Irr. Dist.* v. *Superior Court,* 197 Cal. 649 [242 P. 725]; *Clark* v. *City of Los Angeles,* 160 Cal. 30, 43 [116 P. 722].)

The fact that the proceeding was fatally defective is not alone an insurmountable obstacle to the exercise of the curative power; for, as said in *People* v. *Holladay, supra,* at page 305, if it was not fatally defective it would stand in no need of the healing power. But there are certain limitations on the exercise of that power. Included therein are the inhibitions of the federal and state Constitutions. The permissible exercise of the power and the limitations thereon are set forth generally in *Chase* v. *Trout,* 146 Cal. 350 [80 P. 81], and similar cases, and may be summarized as follows:

The Legislature may cure irregularities or omissions

to comply with provisions of a statute which could have been omitted in the first instance. This rule is quoted from Cooley on Constitutional Limitations, at page 457, as follows: ''If the thing wanted or failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the manner or mode of doing some act, and which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.'' (*Gordon* v. *City of San Diego,* 101 Cal. 522, 528 [36 P. 18, 40 Am.St.Rep. 73]; Cooley's Constitutional Limitations, 8th ed., pp. 775-776.)

But the Legislature cannot cure defects which are sometimes termed jurisdictional. Among the jurisdictional requisites are (a) a duly constituted taxing authority; (b) property to be taxed within the territorial jurisdiction of the taxing body; (c) property or subject matter legally subject to the tax; and (d) sufficient notice and opportunity for hearing to constitute compliance with due process. (See *Graham & Foster* v. *Goodcell,* 282 U.S. 409 [51 S.Ct. 186, 75 L.Ed. 415]; *Swayne & Hoyt, Ltd.* v. *United States,* 300 U.S. 297 [57 S.Ct. 478, 81 L.Ed. 659]; *People* v. *Goldtree,* 44 Cal. 323; *People* v. *Lynch,* 51 Cal. 15 [21 Am.Rep. 677]; *Harper* v. *Rowe,* 53 Cal. 233; *Baird* v. *Monroe,* 150 Cal. 560 [89 P. 352]; *People* v. *Van Nuys Lighting Dist.,* 173 Cal. 792 [162 P. 97, Ann.Cas. 1918 D 255]; *Fall River Valley Irrigation Dist.* v. *Mt. Shasta Power Corp.,* 202 Cal. 56 [259 P. 444, 56 A.L.R. 264]; *Golden Gate Bridge etc. Dist.* v. *Felt,* 214 Cal. 308, 323 [5 P.2d 585]; *Texas Co.* v. *Bank of America etc. Assn.,* 5 Cal.2d 35, 43 [53 P.2d 127]; *Hall* v. *Fairchild-Gilmore-Wilton Co.,* 66 Cal.App. 615 [227 P. 649]; 6 R.C.L. 321; 24 Cal.Jur. 30 et seq.) While the Legislature cannot cure the omission of jurisdictional requisites, the manner of procedure, after jurisdiction is acquired and the mandates of due process are complied with, are matters within the legislative discretion and may be subjected to the exercise of the healing power so long as further constitutional inhibitions are observed.

The Legislature may not enact curative legislation the effect of which would be to destroy or unlawfully infringe upon vested rights. In such cases laws confessedly retrospec-

tive have been declared ineffective when they were held to be in conflict with some right secured either by a constitutional guaranty or protected by the principles of universal justice. (*Galland* v. *Lewis*, 26 Cal. 46, 47, 49, citing *Terrett* v. *Taylor*, 9 Cranch (U.S.) 43 [3 L.Ed. 650]; *City of Los Angeles* v. *Oliver*, 102 Cal.App. 299, 310 [283 P. 298]; 5 Cal.Jur. 747.)

■ As said in *City of Los Angeles* v. *Oliver, supra*, at page 310, citing 6 R.C.L. 308, and *Campbell* v. *Holt*, 115 U.S. 620 [6 S.Ct. 209, 29 L.Ed. 483], a vested right, as that term is used in relation to constitutional guaranties, implies an interest which it is proper for the state to recognize and protect, and of which the individual may not be deprived arbitrarily without injustice. ■ The question of what constitutes such a right is confided to the courts. In *Glide* v. *Superior Court*, 147 Cal. 21, at page 30 [81 P. 225], it was said, through Mr. Chief Justice Beatty, concurring, that vested rights of property and contract rights are placed by the Constitution under the protection of the courts, where alone the questions of law and fact upon which they depend can be finally decided. That declaration was quoted with approval by this court in *Inglin* v. *Hoppin*, 156 Cal. 483, 488 [105 P. 582].

■ When the power of the court is invoked to protect the right, the inquiry may be "Whether, in the case presented, the effect of applying the statute is to deprive the party of his property without due process of law" (*Chase* v. *Trout, supra*, at p. 359). For example "the Legislature has no power to take the property of one person and give it to another." (*Gillan* v. *Hutchinson*, 16 Cal. 153, 156.) The right of "acquiring, possessing and protecting property" is anchored in the first section of the first article of our Constitution. This right is as old as Magna Charta. It lies at the foundation of our constitutional government, and "is necessary to the existence of civil liberty and free institutions." (*Billings* v. *Hall*, 7 Cal. 1, 6.)

■ As to the plaintiff's property right in the present case it was stipulated that his common source of title was in Edward Russek. In 1915 the Piersons, husband and wife, purchased the property and executed to Russek a purchase money mortgage including therein the parcels involved in this action. The validity of the mortgage, the foreclosure of which is the basis of the plaintiff's title, may not now be questioned. (*Dexter* v. *Pierson, supra; Busing* v. *Pierson, supra*.) ■ The

plaintiff is the successor in interest of the mortgagee. The mortgagee's interest was therefore at first an equitable estate in the property. By the sheriff's sale and deed the equitable estate was converted into a legal estate which became a property right vested in the plaintiff in 1937, prior to the passage of the curative act of 1943, and of which he may not be divested except in a manner provided by law.

In the enactment of the curative act of 1943 the Legislature was scrupulous in observing the constitutional limitations on the exercise of its power. Section 2(a) limits the operation of the act to the correction of "defects, irregularities and ministerial errors which the Legislature originally could have omitted." To this extent the curative provisions of the act, within the constitutional limitations, unquestionably would be effective. Then section 2(b) limits the act "to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions." The attorney general recognizes the necessity of this limitation, for the first proposition advanced by him is that "The Legislature may cure all defects in the taxing process not violative of constitutional rights." With this we agree. In section 3 the Legislature further recognizes that the act, in "its application to any person or circumstances" might be held invalid, and declares that notwithstanding that fact the act otherwise should be effective.

We are dealing here with a controversy between private parties concerning conflicting claims to the title to real property arising under separate conveyances of record, the plaintiff's deed on foreclosure on the one hand, and the defendants' tax deeds on the other. It has been demonstrated that the curative act of 1929 by its terms is inapplicable to this case; and to give the curative act of 1943 the effect claimed for it would be, "in its application to" the plaintiff under the "circumstances" of this case, to deprive him of his estate without due process of law and thus by a mere legislative rescript pronounce as valid a deed which was void when it was made (*Harper* v. *Rowe*, 53 Cal. 233, 237, 238), and thereby transfer the title of the plaintiff to the defendants. Indeed, it may be said that the application of that curative act in this case would be to sanction a purported judicial determination by the Legislature of conflicting rights in real property which that body may not constitutionally render.

(*Roche* v. *Waters,* 72 Md. 264 [19 A. 535, 7 L.R.A. 533].)

We conclude that the property interest of the plaintiff is a vested right of which he was not divested by the general provisions of section 1 of the curative act of 1943; that such interest was not otherwise affected by the act as contemplated by section 2(b) thereof; and that this is one of the cases wherein the "application" of the act is ineffective as contemplated by section 3 thereof.

From the foregoing a reversal must follow. None of the parties has manifested any dissatisfaction with the finding of the trial court on the issues of adverse possession. The plaintiff was not aggrieved by the finding and the defendants were not aggrieved by the judgment. Therefore questions of the sufficiency of the evidence to support the findings on those issues, or the correctness of the findings and conclusions of the trial court thereon, are not determined.

Other questions discussed by the parties have been considered but a specific reference to them is unnecessary. The question of reimbursement if any to the tax deed purchasers is not involved on this appeal.

The portion of the judgment appealed from is reversed.

Curtis, J., Carter, J., and Schauer, J., concurred.

TRAYNOR, J., Dissenting.—The majority opinion fails to specify any statutory requirement that the notices of sale did not meet. It states that the trial court found the notices of sale fatally defective because they omitted the word "penalties" in stating the amount due. Actually, however, there is no finding by the trial court as to why the notices were invalid or in what manner they departed from the statutes then in effect.

If any irregularity exists it is essential that it be identified. If there was no departure from the statutory requirements the tax deeds are valid; if there was, it is necessary to determine whether it was of a kind that could be remedied under the curative act of 1943. The statutes governing the publication of the delinquent lists are sections 3764 and 3765 of the Political Code.

*The Requirements of Section 3764 Were Fully Met.*

Section 3764 as it read in 1912 and 1918, when the lists were published, provided that at certain prescribed times the

tax collector "must publish the delinquent list, which must contain the names of the persons and a description of the property delinquent, and the amount of taxes, penalties, and costs due, opposite each name and description." The delinquent lists in the present case were published at the prescribed times and contained the names of the persons and a description of the property followed by a figure representing the amount due, as required by section 3764. The plaintiff made no attempt to prove that this figure did not correctly represent the total amount of taxes, penalties, and costs due. Since presumably public officials follow the law and perform their duties properly, it must be assumed, in the absence of evidence to the contrary, that the figure opposite each description represented such amount. (Code Civ. Proc., sec. 1963(15); *Bray* v. *Jones*, 20 Cal.2d 858, 860 [129 P.2d 364].) Moreover, at the times of the execution of the deeds in question Political Code section 3786 provided: "Such deed, duly acknowledged or proved, is primary evidence that . . . (5) At a proper time and place the property was sold as prescribed by law, and by the proper officer; . . .," and Political Code section 3787 provided: "Such deed, duly acknowledged or proved is (except as against actual fraud) conclusive evidence of the regularity of all other proceedings, from the assessment by the assessor, inclusive, up to the execution of the deed." It should be noted that while the delinquent list must contain the amount of taxes, penalties, and costs, there is no requirement that it state that it does so. The requirements of section 3764 were therefore fully met.

*The Requirements of Section 3765 Were Fully Met.*

Section 3765, as it read when the lists were published, provided: "The tax collector must append and publish with the delinquent list a notice that unless the taxes delinquent, together with the costs and penalties, are paid, the real property upon which such taxes are a lien will be sold." The notice in the present case was phrased in substantially the language of that section: "Now, Therefore, I, W. C. Welch, Tax Collector in and for the County of Los Angeles, by virtue of authority in me vested by law, hereby give public notice that unless the taxes delinquent as appear by said list, together with the costs and *penalties,* are paid, I as said Tax Collector, at the office of the County Tax Collector, in the City of Los Angeles, on Monday, the First Day of July,

1912, at the hour of 10 o'clock, A. M. will sell all said real estate upon which taxes are a lien to the State of California." (Italics added.) There was thus no omission of the word "penalties" or any other word the inclusion of which was required by section 3765. The validity of such a notice was sustained by this court in *Bray* v. *Jones,* 20 Cal.2d 858, 861 [129 P.2d 364], and the language there used applies with equal force to the present case: "When, as in this case, the notice sets forth the name of the person whose property is assessed, a description of the property, and 'an amount equal to the total amount of all taxes, assessments, penalties and costs due' and provides that the property will be sold unless the taxes delinquent, together with interest and penalties are paid, the notice conforms to the requirements of Political Code, sections 3764 and 3765."

*The Omission of the Word "Penalties" in a statement by the Tax Collector, Not Prescribed by Statute, Was Not Designed to Indicate an Exclusion of Penalties from the Amount Due.*

If there was any irregularity in the publication of the delinquent lists it must be found in the violation of some principle not prescribed by the statutes of this state. The plaintiff attributes the invalidity of the proceedings to the omission of the word "penalties" in a notice not prescribed by statute but appended by the tax collector at the end of the delinquent list, reading as follows:

"Dollars and Cents

"Public notice is hereby given that the figures appearing opposite, following and last after each description of property in the foregoing Delinquent Tax List for 1911, of and for the County of Los Angeles, were intended to and do represent respectively in Dollars or in Cents, or in Dollars and Cents, as the case may be, the amount due for taxes and costs in the manner as follows, to-wit:

"When or where two figures appear therein, Cents were intended to be and are represented, when or where more than two figures thus appear therein, Cents were intended to be and are represented by the last two figures, and the figures occupying and appearing at the left of the said last two figures, and separated therefrom by a space were intended to and do represent Dollars, so that the amount due for

taxes and costs in the respective cases aforesaid are thus expressed in Dollars and Cents.''

Obviously the purpose of this statement was to explain that the figures represented dollars and cents, and the reference to taxes and costs was incidental to that explanation. It was not the purpose of this statement to set forth what the dollars and cents represented, and its omission of the word ''penalties'' cannot therefore be regarded as an intention to exclude penalties from the amount due. There was nothing misleading in the omission of the word ''penalties,'' for the tax collector had not only complied fully with sections 3764 and 3765, which govern the publication of the delinquent lists, but he had stated clearly in the addenda notice published in 1917 that ''no bid for said property will be accepted for less than the amount of all taxes, penalties and costs due on said property for the year same was originally struck off and sold to the state (in 1912 for taxes of the year 1911) which minimum amount is set forth opposite the description of said property.'' The cases relied upon by the plaintiff and cited in the majority opinion not only failed to show that the notice violated any statute, but erroneously assumed that the statutes required the tax collector to append a statement that the figures represented taxes, penalties, and costs. Since there is no such statutory requirement and no other reason appears why the error should render the notices invalid, these cases should be disapproved.

The majority opinion quotes from *Bray* v. *Jones,* 20 Cal. 2d 858, 862 [129 P.2d 364], as follows: ''The failure to set forth the amount due for penalties, emphasized by the statements in the notices that penalties were not included, was plainly in violation of the statute as it then read.'' This statement was made in distinguishing that case from what had commonly been understood to be the holding in *Gottstein* v. *Kelly,* 206 Cal. 742 [276 P. 347], that section 3764 required taxes, assessments, penalties, and costs to be separately stated. It cannot be dissociated from the sentence immediately preceding it: ''In any event the cases relied upon by the defendant were concerned with section 3764 when, as interpreted by *Gottstein* v. *Kelly, supra,* it required taxes, assessments, penalties, and costs to be separately stated.'' This general understanding of the holding in the Gottstein case prompted the legislation in 1929 to clarify

the section and validate previous notices thereunder (Stats. 1929, p. 742) and it therefore appeared unnecessary in *Bray v. Jones* to revive an issue as to the holding in the Gottstein case.

Further consideration of the Gottstein case discloses that it did not actually hold that taxes, assessments, penalties, and costs had to be separately stated. In that case several lots were separately assessed to the same person, and the notice of sale was held invalid because it showed the aggregate amount of taxes, penalties, and costs for all the lots instead of setting forth the proportionate amount thereof opposite each description as prescribed by the section. The court did not hold, as has been commonly assumed, that section 3764 required taxes, penalties, and costs to be separately stated. It held that when parcels in single ownership are separately assessed, the taxes, penalties, and costs due for each parcel must be set forth opposite the description thereof as provided by section 3764, so that the owner can determine the amount necessary to redeem any parcel that he may wish to redeem apart from the others. While the court referred to *Cordano* v. *Kelsey*, 28 Cal.App. 9 [151 P. 391, 398], holding that under Political Code, section 3897, as it read in 1911, taxes, penalties, and costs must be separately stated in the notice of sale under that section, this holding was not made applicable to section 3764. There was no necessity for such an application in view of the failure to set forth the amount due opposite each description as required by section 3764. In any event, had the Legislature intended to provide that taxes, penalties, and costs be separately stated it could have done so unequivocally. Its choice of the singular "the amount" of taxes, penalties, and costs plainly indicates that an aggregate amount was to be set forth opposite each description so that the owner would know the amount necessary to redeem his property. The opinion in *Gottstein* v. *Kelly* does not point to any language in section 3764 requiring that these items be separately stated or attempt to show how the section could be construed to make such a requirement. Since the Gottstein case did not hold what the quotation from *Bray* v. *Jones* assumed it held, and the majority opinion recognizes that it did not, that quotation cannot now be taken from its context to serve as a recognition "of the correctness of the prior holdings."

Even if the statutes governing the present case had required the tax collector to append a statement that the figures represented taxes, penalties, and costs, his omission of the word "penalties" from the statement is cured by the 1943 act. That act cannot be held unconstitutional without repudiating principles that have been the established law of this state since its earliest days. In 1859, in *Moore* v. *Patch,* 12 Cal. 265, involving legislation confirming a delinquent tax list, the court recognized the power of the Legislature to pass curative statutes validating proceedings in the levying and collecting of taxes notwithstanding irregularities therein, and this power has been reaffirmed in many cases since that time. (*Cowell* v. *Doub,* 12 Cal. 273; *People* v. *Holladay,* 25 Cal. 300, 301; *Wetherbee* v. *Dunn,* 32 Cal. 106, 108; *People* v. *McCreery,* 34 Cal. 432; *People* v. *Goldtree,* 44 Cal. 323; *Rollins* v. *Wright,* 93 Cal. 395 [29 P. 58]; *Haaren* v. *High,* 97 Cal. 445 [32 P. 518]; *Ramish* v. *Hartwell,* 126 Cal. 443 [58 P. 920]; *Chase* v. *Trout,* 146 Cal. 350 [80 P. 81]; *Baird* v. *Monroe,* 150 Cal. 560 [89 P. 352]; *Carter* v. *Osborn,* 150 Cal. 620 [89 P. 608]; *Peck* v. *Fox,* 154 Cal. 744 [99 P. 189]; *Imperial Land Co.* v. *Imperial Irrigation District,* 173 Cal. 660 [161 P. 113]; *Clayton* v. *Schultz,* 4 Cal.2d 425 [50 P.2d 446]; *Schamblin* v. *Means,* 6 Cal.App. 261 [91 P. 1020]; *City of Santa Monica* v. *Los Angeles County,* 15 Cal.App. 710 [115 P. 945]; *Stuart* v. *Chapman,* 87 Cal.App. 552, 553 [262 P. 348].) Only those acts or omissions that the Legislature is restrained by constitutional limitations from sanctioning in advance, often characterized as "jurisdictional," cannot be validated by curative statutes. (See 24 Cal.Jur. 30.) The confusion that arose from describing as jurisdictional, irregularities that violated only material statutory requirements, without inquiring whether or not they were also in violation of the state or federal Constitution, prompted an examination of the whole subject in an exhaustive opinion for the court by Justice Shaw in *Chase* v. *Trout, supra.* That opinion reiterated the rule that a curative statute may preclude the investigation of all questions except whether the statute if enacted in advance would violate the due process clause or other provisions of the state or federal Constitution. As to all "other statutory steps or acts, the same power which prescribes them is competent to declare that their non-observance shall not be fatal to the validity of the

tax and that no inquiry may be made concerning them.''
(*Chase* v. *Trout, supra,* at p. 359; *Swayne & Hoyt Ltd.* v.
*United States,* 300 U.S. 297 [57 S.Ct. 478, 81 L.Ed. 659];
*Graham & Foster* v. *Goodcell,* 282 U.S. 409 [51 S.Ct. 186, 75
L.Ed. 415]; *Charlotte Harbor & N. R. Co.* v. *Wells,* 260 U.S.
8 [43 S.Ct. 3, 67 L.Ed. 100].) Shortly thereafter the rule
was reaffirmed in *Baird* v. *Monroe, supra,* and the opinion of
the court by Justice Angellotti distinguished *Harper* v. *Rowe,*
53 Cal. 233, on which the majority opinion relies, on the
ground that ''There the levy of the tax was invalid for want
of any law authorizing it to be levied.''

It is contended that the alleged violation is a jurisdic-
tional one because it prevented an effective transfer of title.
If a defect prevents an effective transfer of title at the tax
sale, title remains in the owner. If the defect does not pre-
vent an effective transfer of title, the tax deed is valid and
any discussion of curative acts becomes idle. (*People* v. *Hol-
liday,* 25 Cal. 300, 305.) The foregoing contention would
apply to any violation of a statutory requirement with respect
to proceedings in tax sales and would serve to ban curative
statutes entirely with respect to such proceedings. By assum-
ing that noncompliance with a statutory requirement is juris-
dictional even though the requirement is not essential to meet
the mandates of the state or federal Constitution, this con-
tention falls into the very error that *Chase* v. *Trout, supra,*
sought to prevent. It is settled that the Legislature can val-
idate conveyances between private persons that would other-
wise be ineffective to transfer title because of noncompliance
with statutory requirements. (*Dentzel* v. *Waldie,* 30 Cal. 138;
*Steger* v. *Traveling Men's Bldg. & L. Assn.,* 208 Ill. 236
[70 N.E. 236, 100 Am.St.Rep. 225]; and cases collected in
57 A.L.R. 1197.) There is no reason why a different rule
should govern transactions in which the state is an inter-
ested party. (See *Gordon* v. *City of San Diego,* 101 Cal. 522
[36 P. 18, 40 Am.St.Rep. 73].)

There can be no question that the Legislature could have
omitted at the outset any requirement as to a statement that
the amount due includes penalties. The subject of the tax was
clearly within the jurisdiction of the taxing authorities;
there was an assessment of the property and ample oppor-
tunity for the equalization of the assessment; there was a levy
of the tax and notice was given of the delinquency and of

the sale of the property; and there were liberal provisions for the redemption of the property. Neither the majority opinion nor the briefs cite any act or omission in the entire proceedings from the assessment of the property to its sale by the state that would violate any constitutional provision or that could not have been previously authorized by the Legislature. The notices of sale to the state and of the subsequent sale by the state were more than sufficient to meet the requirements of due process of law. There is nothing in the due process clauses of either the state or federal Constitution requiring that such notices be given in a particular form or that a form once prescribed be adhered to meticulously. Certainly neither these nor any other constitutional provisions provide that the notices must contain a statement that the amount due includes "penalties."

The majority opinion assumes that the mortgagor-owner had no rights that would prevent the application of the curative act but holds that since the plaintiff's rights are based on his title by deed at the mortgage foreclosure sale, they intervened between the tax deed and the curative act and are therefore excepted from the rule of the foregoing cases. A mortgagee's title, however, is no better than that of the owner, for the tax lien is at all times prior to the mortgage lien, and the mortgagee takes the property subject to the state's claim for taxes. (Pol. Code, sec. 3716; *California Loan & Trust Co.* v. *Weiss,* 118 Cal. 489 [50 P. 697]; *Williams* v. *Cooper,* 124 Cal. 666 [57 P. 577]; *German Savings & Loan Society* v. *Ramish,* 138 Cal. 120 [69 P. 89, 70 P. 1067]; *O'Dea* v. *Mitchell,* 144 Cal. 374 [77 P. 1020]; *Guinn* v. *McReynolds,* 177 Cal. 230 [170 P. 421]; *State* v. *Royal Consolidated Mining Co.,* 187 Cal. 343 [202 P. 133].) The mortgages were dated May 28, 1915, which was before the attachment of the lien for the 1916-1917 taxes but after the attachment of the lien for the 1911-1912 taxes. The tax liens were superior to all prior as well as all subsequent liens arising out of private contracts. (*Ibid.*) The tax deeds validated by the 1943 legislation are based upon the tax liens and are therefore superior to the claims not only of the former owners but of those deriving title therefrom, since the title of the mortgagee and of those claiming under him can be no better than that of his predecessors in interest. (*San Francisco* v. *Lawton,* 18 Cal. 465, 474 [79 Am.

Dec. 187] ; *Branham* v. *Mayor and Council of San Jose,* 24 Cal. 585, 604; *Kreichbaum* v. *Melton,* 49 Cal. 50, 54; *Robinson* v. *Thornton,* 102 Cal. 675, 680 [34 P. 120] ; *Hoppe* v. *Hoppe,* 104 Cal. 94, 99 [37 P. 894] ; *Hodge* v. *Norton,* 133 Cal. 99, 100 [65 P. 123] ; *Freelon* v. *Adrian,* 161 Cal. 13 [118 P. 220] ; *White* v. *Rosenthal,* 140 Cal.App. 184 [35 P.2d 154] ; see 18 Cal.Jur. 613; Code Civ. Proc., sec. 700.)

Plaintiffs were not bona fide purchasers for value without notice of the tax liens and the proceedings for their enforcement, for they acquired the property subject to the tax liens (Pol. Code, sec. 3716; *California Loan & Trust Co.* v. *Weiss, supra; Williams* v. *Cooper, supra; German Savings & Loan Society* v. *Ramish, supra; O'Dea* v. *Mitchell, supra; Guinn* v. *McReynolds, supra; State* v. *Royal Consolidated Mining Co., supra;* see, also, *District Bond Co.* v. *Pollack,* 19 Cal.2d 304, 307-308 [121 P.2d 7] and cases there cited) and are charged with notice of the tax proceedings, which are matters of public record. (*Reeve* v. *Kennedy,* 43 Cal. 643, 654; *Grant* v. *Cornell,* 147 Cal. 565, 567 [82 P. 193, 109 Am.St. Rep. 173] ; *Newcomb* v. *City of Newport Beach,* 7 Cal.2d 393, 406, 407 [60 P.2d 825] ; *In re Seick,* 46 Cal.App. 363, 369 [189 P. 314].) It must be assumed that plaintiffs were aware of the technicality on which their grantor's title depended. No reason appears why a person thus gambling on the possibility that a defect in the tax proceedings may have established his grantor's title should not, like the grantor himself, be subject to the power of the state to correct the defect.

The intricacy of the tax laws makes it inevitable that proceedings in the levying and collecting of taxes should constantly fall short of perfection. If they succeed in accomplishing faithfully the objectives of the Legislature, it is captious to condemn them for failing to cross the T's of a detail not essential to those objectives, and doubly so to reject a curative statute of the Legislature that would avert serious consequences of an inconsequential error in an otherwise correct notice. Insistence upon an impossible perfection can only lead to wholesale invalidation of tax titles in Los Angeles County where notices like that in the present case were used for many years. One may well ask to what end, since the needless discouragement of the purchase of property at tax sales only serves to keep such property off

the tax rolls and to increase the tax burden on other property with the net effect of penalizing property owners who pay their taxes.

Gibson, C. J., and Edmonds, J., concurred.

Appellant's and respondents' petitions for a rehearing were denied April 18, 1944. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a rehearing.